## Staunton.

### GURNEE V. JOHNSON'S EX'OR AND ALS.

#### September 27th, 1883.

1. JUDGMENT LIENS—*Priorities.*—Code 1873, ch. 182, § 6, makes every judgment rendered in this state, a lien on all the debtor's real estate, and the prior judgment hath ·priority as between the judgments, whether docketed or undocketed.

2. IDEM—*Purchasers for value without notice—Priorities—Docketing judgments.*—But by Code 1873, ch. 182, § 8, no judgment is a lien on real estate as against purchasers thereof for a valuable consideration without notice, unless it be docketed in the mode and within the time prescribed. If docketed, the judgment, if prior in time, hath priority over such purchaser.

3. To docket his judgment is creditor's privilege, not his duty. If he fails to docket it, he may lose his lien on the real estate aliened to a purchaser for value without notice.

4. IDEM—*Idem—Case at bar.*—W. owned two tracts of land, viz: "Hart's bottom" and "Connery." J. obtained in April, 1868, a judgment against W., which was not docketed until July, 1870. After the date of J.'s judgment, but before 22nd April, 1870, B. and others obtained judgments against W., which were duly docketed. W., on 22nd April, 1870, executed a trust deed on "Hart's Bottom," to secure a loan of $15,000 from G., which deed was recorded 2nd May, 1870. In contest for priority between G. and the judgment creditors;

HELD:

    1. The judgment of J. from its date was a lien on all the real estate of W., and though undocketed, being prior in date, hath priority of lien over the judgments of B. and others, as to both tracts.

    2. J.'s judgment being undocketed at the time of G.'s deed, and G being a purchaser for value without notice of J.'s judgment, the lien of that judgment on "Hart's Bottom," was lost as against G., whose deed, as to that tract, hath priority over that judgment.

    3. The judgments of B. and others being docketed at the time of G.'s

deed, have priority over that deed as to "Hart's Bottom," but G. hath the right to hold that tract of land as against these judgments, until the real estate of W. (if any) unaliened at the date of G.'s purchase has been exhausted. Code 1873, ch. 182, § 10.

5. IDEM—*Priorities—Statutory rights.*—Liens of judgments and their priorities and the right to enforce the same, are plain legal rights, expressly created by statute, and cannot be judicially modified to soften the supposed hardship of secret encumbrances.

Appeal from decree of circuit court of Rockbridge county, rendered 21st April, 1881, in a certain suit wherein G. W. Bansemer & Co. were plaintiffs and G. A. White and als. were defendants.

The object of the suit was to subject White's two tracts of land to satisfy certain judgment liens. After the rendition of these judgments, and before the docketing of that of G. W. Johnson's executor, which was the senior judgment, and after docketing of the judgments of Bansemer & Co., which were the junior judgments, Walter S. Gurnee became the purchaser, for value, without notice of the senior judgment, of one of said tracts—"Hart's Bottom." Contest arose as to priorities. The circuit court decided that as between the judgments, the senior had priority; that as between that senior judgment and Gurnee, *quoad* "Hart's Bottom," Gurnee had priority; but that as between the docketed judgments and Gurnee, those judgments had priority. From this decision Gurnee obtained an appeal from one of the judges of this court. The opinion states the facts.

*Sheffey & Bumgardner,* and *Edmund Pendleton,* for the appellant.

The object of section eight of said chapter one hundred and eighty-two, Code 1873, was plainly and unequivocally to afford a ready means to a person about to become a purchaser of land, to ascertain what judgment liens there are on the property he seeks to purchase, by simple inspection of the judgment lien docket. Against any lien or judgment not there recorded, the

statute designs to afford him adequate and substantial protection. The mischief aimed at was the hiding away of judgments, against which no purchaser could protect himself.

What, then, were the rights of Gurnee when he took his deed of trust, as between him and the creditors of G. A. White holding recorded judgments? He had the right, under section ten of said chapter one hundred and eighty-two, to throw these creditors off Hart's Bottom upon the other unaliened property of White until the same should be exhausted. This was a legal right declared and fixed by the statute itself, not in favor of the judgment creditors holding recorded judgments, but a right given to Gurnee solely for his benefit and protection. In other words, although he did not acquire the legal right to White's unaliened property, he did acquire a statutory right to *have* it applied and exhausted, if necessary, for his protection, a right which a court of equity is bound to enforce. And who is it that now proposes to defeat this right of Gurnee? It is a creditor holding an unrecorded judgment, who, with full knowledge of the loan and trust deed at the time they were made, and with knowledge also of this statutory right of Gurnee, did by his *laches*, fail to disclose his adverse claim, and misled Gurnee into parting with his money. True, he does not propose to assert his judgment directly against Hart's Bottom, upon which the court has decided that he has no lien, but he, in fact, proposes this indirectly, but none the less effectually, by striking through others. Section ten provides that Gurnee may shove the recorded judgments on the Connery property; section six, as Steele claims, enables him to shove them back on Hart's Bottom. In view of these clashings of rights and claims apparently equally secured by statute, who shall prevail? Undoubtedly, he who has the superior equity; and in this case, no one can reasonably question that Gurnee has that superior equity.

But it is submitted that the construction sought to be put upon section six is erroneous. That section, fairly construed, can be held to apply only as between judgment creditors, when

the rights of *bona fide* purchasers for value have not intervened. Before Gurnee obtained his deed of trust, Steele's unrecorded judgment was superior in its lien on that property to the recorded judgments. And why? Because section six gave it that superiority. There is no statute which prescribes that a recorded judgment shall be placed above a prior unrecorded judgment by reason of the mere fact of recordation. This, it is conceded, is true as between judgments where no other rights intervene. But, on the day Gurnee recorded his deed of trust, it is submitted that the operation of section six ceased, and the Steele judgment lost its priority, and a new order was established, whereby the recorded judgments, subject to Gurnee's statutory right aforesaid, became first, Gurnee's deed of trust second, and Steele's judgment third. See *Hill* v. *Rixey*, 26 Gratt. 72; *Hoag* v. *Sayer*, 6 Stewart (N. J.)

Now this change was effected in the relative priority of the judgments, not by any express provision of law directing it, but by a necessity arising from the protection required to be given to Gurnee's deed of trust by sections eight and ten, both Steele and the other judgment creditors being charged with knowledge of Gurnee's right in this regard. *Hill* v. *Rixey, supra,* on pp. 81–2, 2 Minor's Inst. pp. 308–9.

Now, if Gurnee's deed of trust had provided that in case the sale of Hart's Bottom should fail to satisfy his claim in full, he should then have a right to sell the Connery property, in order to pay the balance, there can be no doubt that there would have been the same displacement whereby Steele's unrecorded judgment would have been postponed to the recorded judgments, and Gurnee's deed of trust. In other words, section six would have ceased to govern the case "*ex necessitate rei.*"

Now, what has taken place puts the parties substantially in the same category. Gurnee, it is true, has no right directly to subject the Connery property or fund to the payment of his debt; but he has that which is equivalent thereto—namely, the statutory right to *have* it subjected to the payment of the

recorded judgment; and this right he holds by the express terms of section ten, in order to protect his security.

It may be said that Gurnee is not the purchaser of the Connery property, and therefore cannot claim for himself the protection against Steele's unrecorded judgment accorded by the section referred to. But surely this is "sticking in the bark." True, he did not become the absolute purchaser of the Connery property, nor did he acquire the absolute title to Hart's Bottom by his deed of trust, but only the right to have it sold for the payment of his debt. This, however, all the authorities say, gave him the protection accorded by the statute to a purchaser for value. *Exchange Bank* v. *Knox*, 19 Gratt. 739. We respectfully ask, Why does not the same rule of construction protect his right to have the Connery property or fund subjected to the payment of the recorded judgment in preference to Steele's judgment? The necessity for protecting his security is as urgent in the latter case as in the former, and a like principle underlies both.

We have said that Gurnee's equities are superior to those of Steele. This will appear manifest if we consider—first, that Gurnee was a *bona fide* purchaser for value, and without notice of what now alone hurts him, and that, too, through the *laches* of Steele, which misled him; second, that Steele had actual notice that Gurnee was lending money on Hart's Bottom as security, and he gave no notice of his secret judgment; third, that Steele knew that as to all recorded judgments Gurnee had the right, under the statute, to look to and have sold the Connery property in order to pay those judgments; and fourth, notwithstanding these facts, notwithstanding his failure to record his judgment, in order to give persons who were to deal as purchasers with G. A. White, full notice of his judgment lien, notwithstanding that he stood by and allowed Gurnee to part with his money and received a large part of it himself, he now asks a court of equity to enforce his judgment lien to all practicable intents and purposes against Hart's Bottom itself.

His judgment, it is true, is enforceable in a court of equity, but nevertheless he may be met, and properly met, in a court of equity with all equitable objections and defences to the enforcement of that judgment, and we respectfully submit that in order to sustain the decree rendered below it must be held that a court of equity must enforce a judgment only according to the technical wording of the act, and that no equitable objections or defences can be set up against it.

Johnson's executor is here in a court of equity asking for relief. Asking equity he must do equity. He had it in his power to have made it absolutely impossible for Gurnee to have sustained a loss. The matter was brought directly and pointedly to his notice. He stood by and saw Gurnee advancing a large amount on property on which he had a secret and unrecorded lien, which, if once brought to the attention of Gurnee or his counsel, would have instantly arrested the negotiation. Steele, as a lawyer, knew that Gurnee was depending for the security of his loan not only on the deed of trust on Hart's Bottom, but on his legal right to force the holders of docketed judgments against White to seek satisfaction first out of the Connery property. He knew that Gurnee was ignorant of the existence of his large judgment, and yet he kept silent; and not only kept silent, but received a part of the money loaned in payment of other claims he held against White. Is he not equitably estopped now from setting up his judgment to the prejudice of Gurnee?

It is a maxim of equity that he who is silent when conscience requires him to speak, shall be debarred from speaking when conscience requires him to be silent. 2 Smith's Leading Cases, page 766, notes to Duchess of Kingston's case.

In cases where one of two innocent parties must suffer a loss, and *a fortiori* in cases where one has misled the other, he who is the cause or occasion of that confidence by which the loss has been caused or occasioned, ought to bear it. 1 Story's Equity, section 385; *Græme* v. *Cullen*, 23 Gratt. 302.

When a. person having an encumbrance or security upon an estate suffers the owner to procure additional money upon the estate by way of lien or mortgage, concealing his prior encumbrance or security, he will be postponed to the second encumbrance; for it would be inequitable to allow him to profit by his own wrong in concealing his claim and thus lending encouragement to the new loan. And if a prior mortgagee whose mortgage is not registered, should be a witness to a subsequent mortgage or deed of the same property, knowing the contents of the deed, and should not disclose his prior encumbrance, he would be postponed or barred of his title. *Brinckerhoff* v. *Sansing*, 4 Johns. Ch. R. 65; 1 Story's Eq., section 390.

*J. R. Tucker,* and *J. W. Daniel,* for the appellee.

It is a fundamental principle of construction, so wisely and wittily stated by Vattel, that "that which needs no construction should not be construed." The statute, applicable to this case, comes within the purview of this sagacious maxim. Its import is so plain, the necessary meaning of its terms is so apparent, that an intelligent mind cannot escape its significance. And, with all respect to our learned opponents in this case, we submit that their strained effort to twist it into the creation of a theoretical equity, of which its words give no hint, is only the invention of a desperate situation which catches at an imaginary straw.

Section six of chapter one hundred and eighty-two makes a judgment for money a lien on all the real estate of a debtor from the time of its rendition, and by relation from the first day of the commencement of the term of court when rendered in court.

This lien is regardless of docketing. The docketing does not create the lien. It does not preserve it. The lien is put on the land by the statute, and there it sticks as against the debtor and as against the land indefinitely, with certain exceptions. See *Borst* v. *Nalle*, 28 Gratt. 423.

Then we search to see if Gurnee comes within any one of the exceptions by operations of the deed of April, 1870.

2. Section eight states the exception which Gurnee fancies is saving to himself.

It says: " No judgment shall be a lien on real estate as " against a purchaser thereof for valuable consideration without notice, unless it be docketed," &c.

" A purchaser thereof!" These are plain words. A purchaser of real estate, upon which the judgment is a lien, takes *that identical real estate*, freed from the lien, provided he pays value for it, and has no notice at the time of the judgment. If he has notice of the lien, he takes the estate subject thereto ; and so also if he is a volunteer, not paying value, the judgment lien remains.

This is what the statute means, all it means, and all that it could have possibly been intended to mean.

In purchasing Hart's Bottom, and we concede readily that Gurnee is a purchaser for value, Gurnee got the full benefit of this statute.

As to the judgments of Bansemer and others, which were docketed, and of which he was thereby notified, he took the property subject to the lien which they fixed upon it. And that he had actual notice, as well as constructive notice from the docket, is conceded and stated in his petition filed in this very cause.

3. Gurnee having notice of the Bansemer judgments, is not within the exception of the statute. With eyes open Gurnee became the purchaser of Hart's Bottom, and took it with the lien. He is "*a purchaser thereof with notice*," and therefore postponed to the lien ; therefore not within the exception made by the statute as to that lien; therefore with no equity concerning it, or arising out of it, which grows from the fact that it was docketed. If it was undocketed, it would bind Hart's Bottom *as to him* just as effectually as by being docketed, for he had notice of it, and must take the consequences. *Rhea* v.

*Preston*, 75 Virginia, 1 Matthews 757. He has but one equity respecting that notorious lien, and that is to have it satisfied out of other property of White, which was unaliened, provided it can be found. In this case it cannot be found, for the reason that it does not exist. The Connery property is not White's property, save in a limited sense; it is simply his subject to the judgment lien of Johnson's executor upon it.

Gurnee did not become a purchaser of the other real estate of G. A. White. Having no notice of the judgment of Johnson's executor, it ceased to bind Hart's Bottom to the extent of his prior lien. He simply slipped between that lien by absence of notice and the Hart's Bottom property, and left the lien to affect it only as posterior to his. But as to the other property the lien was unaffected by his purchase of Hart's Bottom. He got exactly what he bargained for, and what the records as well as his own deed showed that he was entitled to; *i. e.*, the property he bought subject to the lien he knew of. The exception gives him nothing more, because, as before stated, (1) he had notice of the lien, and (2) because he purchased no more than the property subject thereto.

4. Unable, as to the property known as *"the Connery property,"* to place himself in the attitude of a purchaser, and thereby to get within the saving clause of the statute; and unable as to the Hart's Bottom property, of which he is a purchaser, to escape the Bansemer judgment liens, because he had both actual and constructive notice, the appellant flies for refuge to a distorted construction of section ten. That section, let it be observed, does not create or fix judgment liens. It does not affect their validity nor measure the property to which they shall apply. It only relates to cases in which the estate bound by judgment liens "is more than sufficient to satisfy the same," and when it is more than sufficient to satisfy them, it equitably disposes of it so that each party who has dealt with it may enforce his rights. There being enough to satisfy all by marshalling the property, it simply arranges that this shall be done equitably.

5. All of the real property of G. A. White, except Hart's Bottom, is subject to the judgment lien of Johnson's executor. All of it is also subject to the liens of the judgments of Bansemer and others, after the satisfaction of prior liens.

Section ten does not in anywise disturb, or, indeed, refer to this priority of liens, and we cite it again in full, that it may be observed, in this connection, that it relates merely to the order of subjection in point of time of different parcels of real estate, not to the priority or validity of the judgment liens for which it is to be subjected.

These manifold phrases point with unerring fingers to the intent of the law. Successive alienations shall be successively reached by the judgment liens which affect them in inverse order, the first alienation being the last to give way before the march of the judgment, but all in successive inverse order to give way "until the whole judgment is satisfied." Volunteers stand on the same footing as purchasers for value, and the same "*order of liability*" prevails.

The only decision in Virginia referred to in Gurnee's petition for appeal which bears on the question at issue is *Hill* v. *Rixey*, 26 Gratt. 72. How Gurnee's case can derive any aid or comfort from that precedent it is difficult to conceive.

"A judgment creditor," says Judge Staples, in *Rixey* v. *Starke*, 28 Gratt. 81, "may lose his lien as against a purchaser by a failure to docket, and a subsequent creditor to him *may preserve* his judgment lien against the purchaser by a prompt compliance with the statute."

Let this plain language be applied here. The Bansemer judgments accordingly "preserve their lien" by the compliance of their holders with the statute. This is all we ask; and it is against this unmistakable meaning of the statute, that Gurnee is here appealing. A more recent case reiterates, and more fully illustrates these views. *Rhea* v. *Preston*, 75 Va., 1 Matthews.

7. The appellant is very free in making the charge in his petition that Johnson's executor was guilty of *laches*, and the

*laches*, in his opinion, consisted in not docketing his judgment, so that Gurnee, the purchaser of Hart's Bottom, might know that it was a lien on other property. As to unaliened property, there is no duty owing to anybody to docket a judgment; and that the statute, as to the unaliened property, creates and continues the judgment lien without bringing the question of its being docketed at all in view.

In the case of *Borst* v. *Nalle*, 28 Gratt. 423, the court of appeals discusses the lien of a judgment with reference to these bearings, and shows conclusively in its opinion that that lien continues indefinitely, fixed and immovable, upon all unaliened property.

8. It is not contended, and is nowhere intimated in the record that the lien of Johnson's executor on the Connery property was ever discharged by payment or satisfaction of any kind. Does not the language of Judge Burks in *Borst* v. *Nalle* aptly apply to it, where speaking of the undocketed judgment lien, he says: "Having once attached it continues, unless it is in some way discharged, as long as the real estate on which it rests remains the property of the debtor." The Connery property remains the property of G. A. White subject only to the judgment liens, and, therefore, how. can it be said that they do not continue to attach thereto?

9. Rolling the self-same argument over and over, in different forms, the appellant contends that he has what he styles "a superior equity" to compel the liens of the Bansemer judgments to be paid out of the Connery property.

Let us see. The lien of Johnson's executor on the property is not an equitable lien. It is a legal lien "*express, plain, direct, positive and absolute*," in the language of Judge Burks. Gurnee has no lien upon it at all, either express or implied; direct or indirect; absolute or qualified. The lien of the Bansemer judgments, to which he would be entitled by subrogation, and through which he must claim, are confessedly secondary and posterior to the paramount lien of Johnson's executor. Johnson's executor

has the right by statute to enforce his direct lien in the courts of equity. Gurnee has in equity the right simply to throw off the Bansemer liens on the unaliened property of White, and to subject just what White has, no more, no less. Now where is the superior equity? Is it not necessarily in him who has a legal "*express, plain, direct, positive, absolute*" lien, rather than in him who has an equity? Clearly this is the case, for he who asks equity must do equity.

In brief: the philosophy of the statute is simply the creation of a short-hand process of subrogation, or rather the short-hand reaching of the same result that subrogation would reach. Thus, if Gurnee, the alienee, were to pay the lien on Hart's Bottom he would be subrogated to the right of reimbursement out of unaliened lands. Standing, then, in the shoes of the Bansemer lienors he could subject just what they could subject, *i. e.*, the unaliened lands subject to prior incumbrances. Now the Code by direct proceedings intends to accomplish, without a multiplicity of suits, the same result. Instead of requiring the alienee to pay off liens, and then by subrogation reimburse himself, it compels the lienor to take a straight shoot, and reach out in the first instance to the property or fund, which could be ultimately reached by the alienee were he first to discharge the lien. But in each instance the party moving on that property or fund must take it as he finds it, subject to all prior equities.

This we believe to be the ultimate analysis of this case. See confirmatory of these views, *Whitten* v. *Saunders,* 75 Va., 1 Matth. 567, and *Harman* v. *Oberdorfer,* 33 Gratt. 497; *Renick* v. *Ludington,* 14 W. Va., 367; *McClaskey* v. *O'Brien,* 16 W. Va., 791.


LACY, J., delivered the opinion of the court.


This case is as follows: At the April term, 1868, of the circuit court of Rockbridge county, Joseph G. Steele, executor of

George W. Johnson, recovered a judgment against G. A. White for $10,912.37, which judgment was docketed July, 1870.

Afterwards, and prior to April 22d, 1870, judgments were recovered against the said G. A. White by G. W. Bansemer & Co., and others, aggregating $4,202.11, which were promptly docketed. On the said 22d of April, 1870, the said G. A. White borrowed $15,000 from the appellant, Walter S. Gurnee, and executed a trust deed on his real estate called Hart's Bottom, to secure the same, which was recorded May 2, 1870.

In April, 1868, when the said judgment was recovered by the appellee, Johnson's executor, the said G. A. White was seized of the said Hart's Bottom, and of other real estate called "Connery." The said Connery property was first sold and did not bring enough to satisfy the judgment held by the said appellee, Johnson's executor.

The circuit court of Rockbridge, by the decree of April term, 1881, in a controversy between the holders of the said judgment of Bansemer & Co., and others, and the said White, and the said Gurnee, who had been admitted a party upon his own petition in the suit between *Bansemer & Co., and others,* v. *White,* decided, that the judgment of the appellee, Johnson's executor, rendered at the April term, 1868, was a valid lien upon all the real estate of said White, situated in the county of Rockbridge, notwithstanding that it was not docketed until July, 1870, and still bound such real estate, except so much as was aliened after the rendition of such judgment to a purchaser for valuable consideration without notice of such judgment, from the date of its rendition; the unaliened property of said White being held liable for the judgment of Johnson's executor; the Hart's Bottom real estate, conveyed for the benefit of Gurnee, was held liable for the judgments against said White, recovered before the alienation, and of which the alienee had notice.

From this decree the appellant applied to this court for an

appeal, which was allowed. And the appellant insists here that the unaliened lands of the said White should be held liable to the judgments of which he had notice, and should not be subjected to the lien of the judgment of the appellee, Johnson's executor, of which he had no notice, and against which it was not possible for him to protect himself. That at the time of his purchase, the said White was seized of sufficient real estate to pay and satisfy the said docketed judgments against him, the said White, independent of the real estate sold to the appellant, and that he was entitled under the statute to hold the real estate purchased by him exempt from the liens upon the same, until all the real estate of the debtor retained at the time of his purchase had been subjected first, to satisfy the said liens, and that he purchased under the belief that the unsold lands of the said White were ample to pay and satisfy all the liens on said White's land; that his mistake upon this point was caused by the *laches* of the said appellee, in failing to give him notice of his lien, and that the said appellee should himself suffer the loss which was caused by his own conduct, certainly in a court of equity. And the question in this case is, Was the unaliened real estate of the debtor liable first to the lien of the judgment first rendered and unrecorded, or to the lien of the judgment last recovered, but duly docketed, at the date of the alienation?

Under the sixth section of chapter 182 of the Code, every judgment for money rendered in this state against any person, is made a lien on all the real estate of such person, at or after the date of such judgment.

As between the judgment creditors then the statute is plain. What is the law as between the purchaser for value without notice, and the holder of an undocketed judgment?

The eighth section of the same chapter of the Code, provides, that no judgment shall be a lien on real estate as against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of the same chapter, in the county or corporation wherein

such real estate is situated, either within sixty days after such judgment or fifteen days before the conveyance of such real estate to such purchaser. In this case Hart's Bottom was aliened, and the Johnson judgment was not docketed in the said county within fifteen days before the said alienation, nor within sixty days after the rendition of the judgment. So it is plain that the lien on the aliened land of the said judgment was defeated by the sale of the same, and it is not contended otherwise.

But as between the purchaser of Hart's Bottom and the dock-eted judgments, the eighth section has no application, because as to them the purchaser had notice.

What right did the purchaser have as to the Connery property? By the tenth section of the same chapter of the Code, he had a right to have the Connery property sold, first to satisfy the lien of the judgments against his vendor before the real estate purchased by him was subjected. But when subjected to satisfy the liens of judgments on the real estate of the said vendor, how were these liens to be adjusted? Was it to be subjected under the sixth section, and each judgment held to attach as of the date of its rendition? What equity does Gurnee acquire as to the real estate of White, which was not purchased by him, other than the right to have it sold to satisfy the liens of judgments against his vendor, before the real estate purchased by him is held liable?

The eighth section was framed for the protection of purchasers of real estate, claiming under alienation by the judgment debtor, real estate which, under former laws, would have been subject to the lien of the judgment, even in his hands for value without notice. He is entitled to hold the land he purchased clear of all liens, except such as he had notice of. He was required, as to the land he purchased, to incur no burden, except such as he voluntarily assumed. He purchased his land subject to the lien of the Bansemer judgments, and he has been held to hold it subject to the same.

This court speaking upon this subject in a recent case said: "This lien, conferred by the sixth section of chapter one hundred and eighty-two of the Code, is absolute and unconditional. It is thus provided that every judgment, for money thereafter rendered in this state against any person, shall be a lien upon all the real estate of or to which such person shall be possessed, or entitled at or after the date of such judgment. The only exception to, or limitation upon this sweeping enactment, is found in the eighth section of the same chapter, which declares that no judgment shall be a lien upon real estate as against a purchaser thereof without notice, unless it be docketed as directed."

It will be thus seen that the purchaser of real estate is entitled to hold the same exempt from the lien of an unrecorded judgment, of which he had no notice. But that is the sole exception. The real estate he purchased is protected, but as between all other persons, and all other real estate of the debtor, it is a matter of no consequence whether a judgment is docketed or not.

Much has been said about the hardship of the law in thus maintaining as between creditors this secret encumbrance. But, as is said in the same case, this argument might be addressed to the legislature with more propriety than to the courts. The statutes of registration do not profess and were not intended to guard against all the mischief which arise from conflicting titles or successive alienations of property. An undocketed judgment is good against subsequent creditors with or without notice, and yet the subsequent creditor may have trusted the debtor upon the faith of his ownership of an apparently unencumbered estate.

It has been repeatedly held by this court that the lien of a judgment is an express, absolute statutory lien on the debtor's real estate, and the right to resort to the courts to enforce it is a legal right without terms or conditions to be imposed, except the one which we have noticed as the sole exception, which protects the purchaser without notice against an unrecorded lien

*upon the land which he buys.* As to all other persons and all other real estate the rights of the judgment creditor are precisely the same as they would be if the statute had never been passed, requiring judgments to be docketed.

In a controversy between different judgment creditors priority of time has been held to be priority of right, except in the exception provided by the said eighth section. By operation of that section, as we have seen, the senior judgment lost its lien upon Hart's Bottom, but the Connery property has not been aliened, and is not affected with the lien of a subsequent purchaser for valuable consideration without notice, and the lien of the unrecorded judgment attaches to it under the statute. You cannot take from a party a plain legal right or advantage unless you can bring home to him fraud or other unfair conduct, or a gross neglect of some positive duty imposed by a plain rule of law. 2 Pomery E. J. 676. To docket his judgment is the privilege of the creditor, not his duty. If he does not docket it, he *may lose* his lien on the real estate aliened to a purchaser for value without notice.

The owner of the unrecorded judgment was obliged to give notice to the purchaser of the real estate encumbered by his lien, *or he lost all claim under the law to such real estate.* And the appellee lost his lien on Hart's Bottom by his failure to give such notice, and if the Connery property had been sold to the same purchaser under the same circumstances, he would have lost his lien on that; but the Connery property has not been sold, and does not come within the operation of the eighth section, and so the lien of the judgment remains undisturbed. The statute makes, as we have seen, the lien of the judgment "an express, direct, positive lien on all the real estate of or to which the judgment debtor should be possessed or entitled at or after the date of the judgment."

This court, in the case of *Borst* v. *Nalle and als.*, 28 Gratt. 423, speaking of this lien, said, "It can hardly be said of such a lien as we have described, that it is not a civil right, and one of a high

order, seeing that it is under the law as it stands, and by force of the law, a plain, direct, positive charge upon real estate. Having once attached, it continues, unless it is in some way discharged, as long as the real estate on which it rests remains the property of the judgment debtor. It accompanies the land in its descent to the heirs, follows it into the possession of volunteers, and even into the hands of purchasers for value, if they have notice. It is a mistake to suppose that the eighth section was intended to create a lien against the purchaser by docketing the judgment. The lien is created by section six, and attaches to all the real estate of the debtor, except so far as it is qualified by section eight. The qualification is, that- it shall not extend to real estate aliened after judgment, to purchasers for value who have no notice of the judgment, unless the judgment be docketed in the manner and within the time prescribed. The implication is irresistible, that if it is so docketed it shall be a lien; that is, that the lien which was created by section six shall continue as to such purchasers."

We have said enough, we think, to show that by a proper construction of the several statutes, the lien of a judgment attaches to and follows the lands of the debtor into the hands of a purchaser for value, and continues, provided the judgment is docketed; and, if so docketed, that it is a lien from the date of the judgment as against such purchaser, in like manner and with like effect, as against the debtor; and 'while the docketing a judgment does not *per se* create a lien as against a purchaser for value, without notice, yet it is an act necessary, under our statutes, to be done, in order to preserve, or prevent the loss of, the lien as against such purchaser.

The Bansemer judgments were duly docketed, and were liens upon the Hart's Bottom real estate at the date of the Gurnee deed, and also upon the Connery property, and are paramount to the said deed, so far as the said deed concerns the real estate of said White, the judgment debtor.

The Johnson judgment was a lien, in like manner, on all the

real estate of said White, the judgment debtor, from the date of its rendition, but, being undocketed, is defeated by the said deed on all the land of the said White which is conveyed in the said deed of Gurnee, as the said purchaser was without notice of the said Johnson judgment. The said purchaser holds the said Hart's Bottom absolutely free from the lien of the Johnson judgment. And the said purchaser is entitled to hold the said Hart's Bottom real estate, as against the docketed judgments, until all the real estate of his vendor, White, unaliened at the date of his purchase, has been exhausted.

The Connery property was liable to the judgments obtained against the judgment debtor, as between the judgment creditors in the order of their recovery, and the lien of each attached to the said real estate at the date of and in the order of their recovery, whether docketed or undocketed. The Johnson judgment having been first recovered, hath priority to the judgments of Bansemer & Co., and others; and the said Connery property having been sold, and the proceeds applied to the extinguishment of the liens thereon, according to their priorities; and the judgments of Bansemer & Co., and others, remaining unpaid, the holders thereof are entitled to subject the Hart's Bottom real estate in the hands of the purchaser, Gurneé, to the payment of their said judgments. The said purchaser having purchased the said real estate with notice of their liens, respectively.

The case of *Renick* v. *Ludington et al.*, 14th W. Va. Reports, decided December 14th, 1878, is a case involving the same questions as those involved in this case, and the decision is in accordance with the foregoing views. See also *McClaskey & Crim et al.* v. *O'Brien et al.*, 16th W. Va. Rep. 791. The circuit court of Rockbridge having decided in accordance with the foregoing opinion in the decree complained of, we think there is no error in the said decree, and the same must be affirmed.

DECREE AFFIRMED.