Richmond.

## J. E. NEFF'S ADMINISTRATOR v. W. L. NEWMAN AND OTHERS.

### March 22, 1928.

1. RECORDING ACTS—*Section 5149 of the Code of 1919—Priority as between Unrecorded Deed of Trust and Judgment Creditors.*—Since the enactment of section 5194 of the Code of 1919, it has never been held that an unrecorded deed of trust would be protected against judgment creditors with or without notice.

2. MORTGAGES AND DEEDS OF TRUST—*Equity of Redemption—Lien of Judgment.*—A judgment is a lien on an equity of redemption in land.

3. MORTGAGES AND DEEDS OF TRUST—*Equity of Redemption—Estate.*—An equity of redemption in real estate is an estate in land.

4. MORTGAGES AND DEEDS OF TRUST—*Equity of Redemption—Priority between Judgment Creditor and Unrecorded Deed of Trust—Case at Bar.*— In the instant case a question at issue was the priority between a judgment creditor and the grantee in an unrecorded deed of trust of the debtor. No resulting trust appeared and no act of possession by the grantee in the deed of trust was observed. The deed of trust was a mere security for the debt therein mentioned. The grantors in the deed of trust not only had an equity of redemption in the property conveyed but had the absolute right to redeem the property upon the payment of the debt.

   *Held:* That the case was to be differentiated from the case where an absolute purchaser had paid a part of the purchase price and entered into possession of the land.

5. MORTGAGES AND DEEDS OF TRUST—*Equity of Redemption—Priority between Judgment Creditor and Unrecorded Deed of Trust—Section 5194 of the Code of 1919.*—Where an absolute purchaser has paid a part of the purchase price and entered into possession of the land, a court of equity will limit a judgment creditor to the beneficial interest of the debtor in the property (which is the balance due) on the equitable theory that the debtor holds the property in trust to that extent for the benefit of the purchaser. But this equitable ground of priority and relief is not admitted against the positive provisions of a statute, such as section 5194 of the Code of 1919, declaring that

the enumerated writings shall be void as to creditors if not recorded, whether the creditor had notice of the unrecorded writings or not when the debt was contracted.

6. Mortgages and Deeds of Trust—*Priorities—Unrecorded Deed of Trust—Judgment Creditor—Agreement of Recorded Lien Holders to Subordinate their Liens to an Unrecorded Deed of Trust.*—The fact that two lien holders, whose liens were recorded, expressly agreed to subordinate their debts to an unrecorded deed of trust upon the same property is in no sense binding upon a judgment creditor as to whom the unrecorded deed of trust under section 5194 of the Code of 1919 was void.

7. Mortgages and Deeds of Trust—*Priorities—Unrecorded Deed of Trust—Agreement of Recorded Lien Holders to Subordinate their Leins to an Unrecorded Deed of Trust.*—The fact that a deed of trust was not recorded would not subordinate the grantee to debts of recorded lien holders, who not only had notice of the unrecorded deed of trust but agreed that their debts should be subordinate thereto.

8. Mortgages and Deeds of Trust—*Priorities—Unrecorded Deed of Trust—Judgment Creditor.*—Under section 5194 of the Code of 1919 an unrecorded deed of trust is void as to creditors, whether the creditors had notice of the deed of trust or not, and a judgment of a creditor subsequent to the unrecorded deed of trust has priority over that deed.

9. Mortgages and Deeds of Trust—*Priorities—Unrecorded Deed of Trust—Judgment Creditor—Agreement of Recorded Lien Holders to Subordinate their Liens to an Unrecorded Deed of Trust—Case at Bar.*— The instant case was an appeal from a decree determining priorities among liens upon certain property of a husband and wife, who had made an assignment for the benefit of creditors. It was conceded that apart from a judgment obtained subsequent to the assignment, the order of payment of the funds arising from the sale of the real estate involved would be: 1, An unrecorded deed of trust; 2, the debts of two lien holders who had expressly agreed to subordinate their liens to the unrecorded deed of trust; and 3, the general creditors.

*Held:* That, as the judgment, obtained subsequent to the assignment, had priority over the unrecorded deed of trust under section 5194 of the Code of 1919, the amount of the unrecorded deed of trust would go to the judgment creditor. This did not pay off the judgment creditor in full, but he was only entitled to have his judgment credited by what would have gone to the grantee in the unrecorded deed of trust. This did not diminish what any creditors subsequent to the unrecorded deed of trust would have received, but only took a fund which belonged to the grantee in the deed of trust and paid it on the judgment because the deed of trust was void as to that judgment.

Appeal from a decree of the Circuit Court of Shenandoah county. From a decree subordinating his lien to that of another, named defendant appeals.

*Reversed and remanded.*

The opinion states the case.

*F. S. Tavenner* and *W. L. Newman,* for the appellant.

*Walton & Walton* and *John W. Rust,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This suit was instituted by W. L. Newman and C. W. Bennick, trustees in a deed of assignment executed by G. B. Lohr and Martha R. Lohr, both in their own right and as husband and wife, for the purpose of having the court direct them in the administration of the trust created by the deed of assignment.

The bill of complaint alleges that, by deed dated September 12, 1925, G. B. Lohr and Martha, his wife, conveyed to Newman and Bennick, trustees, certain real and personal estate, subject to all liens existing on the property conveyed, for the payment ratably and without priority of the creditors named in the trust deed and all other creditors of the grantors, pursuant to the provisions of an act of the General Assembly, approved March 31, 1924; that there was, on the 20th day of September, 1924, recorded in the clerk's office, a mortgage from Lohr and wife to the Farm Land Bank of Baltimore, conveying one hundred and seventy acres of land, situated in Shenandoah county, known as the Crickenberger farm, to secure their note to the bank

for $14,000; that, on the 10th day of October, 1924, Lohr and wife conveyed this Crickenberger farm to C. W. Bennick, trustee, to secure the payment of a bond of $3,700.00 to Dr. A. B. Lohr, equally and ratably with a bond of $5,000.00 to Dr. A. L. Hildreth, also secured by deed of trust; that the two deeds of trust executed to secure the respective notes held by Dr. Lohr and Dr. Hildreth were subordinate to a deed of trust executed by Lohr and wife in favor of Martha J. Tusing, to secure the sum of $3,500.00; that the deed of trust dated and acknowledged September 15, 1924, conveying the Crickenberger farm to C. N. Hoover and C. W. Bennick, trustees, to secure the sum due Martha J. Tusing has never been recorded; that complainant, Bennick, had knowledge of the Tusing deed of trust when the general deed of assignment was executed; that the only liens of record against the Crickenberger farm as of the date of the deed of assignment were the mortgage to the Federal Land Bank and the two deeds of trust to Bennick, trustee, securing the notes held by Dr. Lohr and Dr. Hildreth; that the Crickenberger Farm was, after due advertisement, sold at public auction, for the sum of $25,000.00, to Dr. A. L. Hildreth, who complied with the terms of sale; that, although the deed of trust securing Martha J. Tusing in the sum of $3,500.00 has never been recorded, they are advised that Martha J. Tusing claims a lien on the Crickenberger farm, by virtue of the said deed of trust; that, if the Tusing debt should be held to be a valid lien paramount to the Dr. Lohr and Dr. Hildreth liens, and prior to the liens of the deed of assignment, then the assets in hand will not be sufficient to pay all of the said liens. The bill closes with the prayer that the court will direct and supervise the administration of the trust estate.

In the deed of assignment, the debt of Neff's administrator was recognized, but the administrator, without declining in terms or accepting in terms to share in the distribution of the assets of Lohr under the deed of assignment, on the 23rd day of September, 1925, obtained in the circuit court two judgments against G. B. Lohr and Martha R. Lohr, for the respective sums of $500.00 and $5,198.96.

Upon the call of the case, the court ordered an account of liens and the order of their priority. A hearing before the commissioner was had and both Martha J. Tusing and Neff's administrator proved their debts, each asserting priority. In due course, the commissioner filed his report, setting forth that the lien of Martha J. Tusing, secured by the unrecorded deed of trust, had priority over the two judgment liens of Martz, administrator of Neff's estate. Neff's administrator excepted to the report of the commissioner, but the court overruled the exception and decreed that the Tusing lien was prior not only to the judgment of Neff's administrator, but also prior to the liens in favor of Dr. Lohr and Dr. Hildreth, by reason of the fact that they had recognized such priority in the deed of trust securing their debts.

In the written opinion of the learned chancellor, this conclusion is based upon the theory that, after the conveyance to the Federal Land Bank, G. B. Lohr and wife had only an equity of redemption in the Crickenberger farm; that this equity was conveyed in the two deeds of trust to secure Dr. Lohr and Dr. Hildreth, which were recorded prior to the docketing of the judgment of Neff's administrator; and that, in both deeds of trust, the lien in favor of Martha J. Tusing was established as a prior lien on the property. In other words, it was the opinion of the court that Lohr and wife,

having parted with all of their interest in the land, the judgment creditor could acquire no better right to the estate than the debtor himself had at the date of the recovery of the judgment.

To support this view of the chancellor, counsel for appellees rely on *Floyd* v. *Harding*, 28 Gratt. (69 Va.) 401; *McClanahan's Admr.* v. *N. & W. Ry. Co.*, 122 Va. 705, 96 S. E. 453, and kindred cases cited therein. We do not think these cases in point.

*Floyd* v. *Harding, supra*, involved the rights of a purchaser of land under a parol contract. At the time of this decision the registry act did not require a contract for the sale of land to be in writing. It was, therefore, held that the purchaser having been put in possession of the land upon payment of the purchase money, he was possessed of a valid, equitable title, and that the grantor had no interest in the land which could be subjected to the payment of the judgment lien.

Following that decision, section 5192 was enacted, requiring contracts for the sale of real estate to be in writing and recorded in order to be valid against creditors. *Barnes* v. *American Fertilizer Co.*, 144 Va. 692, 130 S. E. 902.

In *McClanahan* v. *N. & W. Ry. Co., supra*, it appears that judgment creditors sought to enforce their lien against real estate held by the railway company by adversary possession under color and claim of title beyond the statutory period, and the court held that the judgments were alive, the claim of the railway company had ripened into a good title, and there was nothing to which the judgments could attach: that the only title the judgment creditors acquired was against the judgment debtor, and not against the company, and was barred as against the company by section 2915 of the Code of 1904.

Another branch of that case involved a parol sale of real estate to school trustees. It appearing that the trustees were in possession of the real estate under a parol contract, the court held that the question was ruled by the decision in *Floyd* v. *Harding, supra.*

[1] An examination of the kindred cases discloses that each of them involved the question of a parol contract for the sale of land, a resulting trust, or some such similar question, and nowhere does it appear that since the enactment of section 5194 this court has held that an unrecorded deed of trust would be protected against judgment creditors with or without notice. This last cited section provides, *inter alia*, that (1) every such contract in writing, (2) every deed conveying any such estate or term, (3) every deed of gift, (4) deed of trust, or (5) mortgage, conveying real estate, shall be void as to lien creditors, until and except from the time it is duly admitted to record.

[2, 3] That a judgment is a lien on the equity of redemption is settled law. In *McClanahan's Admr.* v. *N. & W. Ry. Co., supra,* Judge Burks laid down the doctrine, which is nowhere controverted, that it is "* * * now well established, that an equity of redemption in real property is an estate in the land."

The equity of redemption being real estate, in order to protect her lien against judgment creditors, it was necessary, in view of the plain mandate of section 5194, for Martha J. Tusing to place her deed of trust upon record. The purpose of this statute is to require a person who takes a conveyance of real estate, either in fee or in trust, to have same recorded.

That hard cases result through the negligence of the parties is no fault of the law. It is essential to the stability of business that people should have their legal rights definitely determined. This consideration,

no doubt, influenced the legislature in the enactment of section 5194.

[4, 5] In the instant case, the contention of counsel for appellee, Tusing, rests entirely upon a legal title. No resulting .trust appears. No act of possession is observed. "The deed of trust was a mere security for the debt therein mentioned." *McClanahan's Admr.* v. *N. & W. Ry. Co.*, 122 Va. 749, 96 S. E. 460. Lohr and wife not only had an equity of redemption in the property conveyed, but had the absolute right to redeem the property upon the payment of the debt secured. This fact differentiates the instant case from a case where an absolute purchaser has paid a part of the purchase price and entered into possession of the land. In that event, a court of equity will limit the judgment creditor to the beneficial interest of the debtor in the property (which is the balance due) on the equitable theory that the debtor holds the property in trust to that extent for the benefit of the purchaser. But, as stated by Mr. Minor, "it must be observed, however, that this equitable ground of priority and relief is not admitted *against the positive provisions of a statute*, to .sustain the prior against the subsequent incumbrancer." 2 Minor's Inst. (4th ed.) 966.

Discussing the general effect of section 2465, Code 1887 (now section 5194), this eminent author said: "The statute declares that every one of the writings enumerated * * * as required to be recorded, from one to five, inclusive, shall be void as to. creditors whether they have notice or not (*Guerrant* v. *Anderson*, 4 Rand. [25 Va.] 211). * *." 2 Minor's Inst. (4th ed.) 958. This construction is reiterated on page 964. It is there said: "It is immaterial, as has been remarked more than once (*ante*, page 958; *Guerrant* v. *Anderson*, 4 Rand. [25 Va.] 211), whether the creditor has notice

of the unrecorded writing or not, when the debt was contracted. The statute declares it void as to *all creditors*, without discriminating, as it does in the clause touching purchasers, in *respect of notice.* It should be observed, however, that this doctrine is not that which generally prevails in the United States, but is rather peculiar in Virginia. (*Basset* v. *Noseworth*, 2 Wh. & Tud. L. C. [Pt. 1], 110, 111, etc.; *Eidson* v. *Huff*, 29 Gratt. [70 Va.] 342.)"

[6] The fact that Dr. Lohr and Dr. Hildreth agreed to subordinate their debts to the Tusing debt is in no sense binding upon judgment creditors.

In *Eidson* v. *Huff*, 29 Gratt. (70 Va.) 288, this court held that actual notice of an absolute conveyance of land did not bar a judgment creditor from enforcing his lien, where it was made to appear that the deed was not recorded until after the judgment was docketed. See *Gurner* v. *Johnson, etc.*, 77 Va. 712; *Fulkerson* v. *Taylor*, 102 Va. 314, 46 S. E. 309.

[7-9] Omitting the judgment in favor of Neff's administrator from consideration for the present, it is conceded that the order of payment of the funds arising from the sale of the real estate involved herein would be: 1, the Tusing debt; 2, the Hildreth and Lohr debts; 3, the general creditors. The fact that Mrs. Tusing's deed of trust was not recorded would not subordinate her to the Hildreth and Lohr debts, or the general creditors, because Hildreth and Lohr not only had notice of the Tusing debt but agreed that their debts should be subordinated thereto. Under this schedule, therefore, Mrs. Tusing would get the whole of her debt of $3,500.00, but Neff's administrator has priority over her because he is a judgment creditor, and under section 5194, her deed of trust is void as to the Neff debt, whether Neff had notice of the deed of

trust or not. Therefore, the amount of Mrs. Tusing's debt, which is $3,500.00, which would otherwise have gone to her, would go to Neff's administrator on his judgment. This does not pay off Neff in full, but his administrator is only entitled to have his judgment credited by what would have gone to Mrs. Tusing. This does not in the slightest degree diminish what any creditors subsequent to Mrs. Tusing would have received, but only takes a fund which belonged to Mrs. Tusing and pays it on the Neff judgment because Mrs. Tusing's deed of trust is void as to that judgment. It seems clear that none of the fund secured to Mrs. Tusing would be paid to Hildreth and Lohr, second deed of trust holders, for two reasons—first, because the statute subordinates them to the Tusing debt, and, second, because by express contract they are subordinate. It follows that the Tusing fund, or $3,500.00 thereof, must be paid either to Mrs. Tusing or to Neff's administrator, the judgment creditor. The statute declares the Tusing debt to be void as to judgment creditors, whether they had notice or not of the Tusing deed of trust, because it was not recorded. Therefore, as between Mrs. Tusing and Neff's administrator, the judgment creditor, to the amount of the judgment the fund should be paid to the latter. This is in conformity with the statute in every particular.

We think, therefore, that the trial court should have sustained the exception of appellant to the report of the commissioner, and for the error committed by the trial court in not doing so the decree must be reversed and annulled and the cause remanded to the lower court to be proceeded with as indicated in this opinion.

*Reversed.*

PRENTIS, P., dissenting:

I am constrained to dissent in this case, and to express my reasons therefor.

The majority hold that the lien of the judgment of Neff's administrator, which is the junior lien of all of those here involved, is not only paramount to the unrecorded deed of trust in favor of Martha J. Tusing, and with this I agree, but, as a result of this priority, they also hold that this judgment lien is prior to the liens of the recorded deeds of trust—that is, the deeds of trust securing the debts of Lohr and Hildreth and the general assignment for the benefit of all the creditors of the debtor, both of which deeds were recorded before the judgment was obtained. To this latter conclusion I cannot assent.

The question has been the subject of an interesting debate, found in 12 Va. L. Journal, pages 360, 424, 487, 488, and in the article by the Honorable John Randolph Tucker, 1 Va. L. Reg., page 4, and the reply thereto of the Honorable John B. Moon, at page 254. It would weary the flesh to undertake to repeat or to analyze these arguments. Some of them are elusive and difficult to grasp. Mr. Tucker calls the question a puzzle—a legal paradox—and one of the definitions of a "paradox" is, that it is "contradictory, seemingly opposed to common sense." I wish primarily to utter an emphatic dissent from the soundness of that logic which so construes the Virginia recording acts as to lead to a paradox—to a contradictory conclusion which is seemingly opposed to common sense. It should certainly be presumed that the General Assembly never intended the recording statutes to be construed to produce such a result.

The puzzle must be sought for before it can be perceived, and the question is answered without any

intimation that its solution is difficult in 15 R. C. L., section 283, page 817, in this language: "For example, if between a judgment and an unrecorded mortgage there is a second mortgage which is entitled to priority over such judgment, but which must be postponed as to the prior unrecorded mortgage by reason of the second mortgagee having notice thereof, such unrecorded mortgage will also be entitled to priority over such subsequent judgment." Citing *Manufacturers, etc., Bank* v. *Bank of Pennsylvania*, 7 Watts & S. (Pa.) 335, 42 Am. Dec. 240.

This is the language of Gibson, C. J., in that case, upon which the statement just quoted is based: "The succeeding liens stand clear of exception; but though the lien of the Manufacturers' and Mechanics' Bank is bad against them, it is good against the Bank of Pennsylvania, which had actual notice, and whose lien is good against all the rest. On the principle of *Wilcocks* v. *Waln*, 10 Serg. & R. [Pa.] 380, the result is that the Manufacturers' and Mechanics' Bank is entitled in the first instance. The creditors subsequent to the Bank of Pennsylvania cannot come in till it has been satisfied, which cannot be till the prior lien of the Manufacturers' and Mechanics' Bank has also been satisfied, and as they are not in the field, inasmuch as they are not to be paid, the fund being insufficient to reach them in any event, the contest which is between that bank and the Bank of Pennsylvania is settled by what has already been said."

Expressed differently, the judgment there was that the unrecorded lien of the Manufacturers' and Mechanics' Bank, though void as to subsequent lienors without notice, was nevertheless good as against the Bank of Pennsylvania, which though it had a recorded lien, also had actual notice; but the lien of the Bank of

Pennsylvania which was recorded was also held good against all the rest of the subsequent lienors.

It is properly held in this case that the unrecorded lien of Martha J. Tusing is a nullity as against the subsequent judgment creditor, Neff's administrator, but nevertheless that invalid lien (nullity) is immediately revivified sufficiently to advance and establish the subsequent judgment creditor to the place of a first lienor. Such a holding is to me inconsistent and irreconcilable. If it be a nullity as to the judgment creditor (as it is), how can it be immediately validated for his benefit? As to the judgment, the unrecorded lien is invalid, *i. e.*, just as if it had never existed, but how can it be logically concluded, solely because that unrecorded lien is subordinate to the judgment, that therefore the other liens by deeds of trust which are duly recorded are also subordinate to and inferior liens to this subsequent judgment? While the statute expressly avoids the unrecorded lien as to the judgment, it certainly does not, in express terms, either substitute the judgment to the place of the invalid lien, or advance the judgment over any other liens, or change its relation to any other liens. The judgment creditor is here relying upon the recording acts, and these statutes, in express terms, postpone the lien of a judgment to the liens of deeds of trust which are duly recorded before the judgment was recovered. By the recording acts they should all stand or fall..

The contrary view undertakes by logic to transform that which is a nullity (Tusing's unrecorded deed) as to Neff's administrator, into a first lien, or its equivalent for his benefit. This would be the effect, it is true, if we had here only to consider the unrecorded lien of Tusing and the judgment of Neff's administrator— Neff would have priority under the recording acts, and

Tusing could not claim against the judgment; but the logic is faulty which ignores any of the pertinent facts, and this is faulty because it ignores and displaces the subsequent valid recorded liens, which are manifestly superior, under the recording acts, to the judgment subsequently recorded which is manifestly inferior. Those who take this view seem to satisfy themselves with the statement, that the valid subsequent lienors having had notice of the Tusing deed of trust get just as much of the fund because their debts are postponed to the Tusing debt. But is not this statement offset by the statement that the judgment creditor should not, for that reason alone, be entitled to more than he would have received if there had never been any Tusing debt or lien? He certainly should not receive any less, but why on that account merely should he receive more? Is he not entitled, and only entitled, to precisely what he would have received if there had never been any such prior invalid lien? Passing strange to me it is that the mere fault of Tusing in not recording her deed of trust is held not only to have destroyed the priority of those others who did record their liens, but also to have advanced the junior lien, the judgment, to the first place. Moreover, as a result of this fault of another, the judgment debtor himself is deprived of the privilege of creating any voluntary subsequent liens upon his property which would not inevitably be displaced by a later judgment. The reasoning which has thus irrevocably transformed a junior lien, clearly inferior to other valid liens, into a first lien upon the fund, and this only because the holder of the prior deed of trust failed to record it, seems to me to be both illogical and violative of the dominating purpose of the recording statutes.

There are a number of other considerations—among them, the perfectly well settled proposition that, as a general rule, the lien of a judgment attaches only to the interest of the judgment debtor in the property; and also that having the opportunity to adopt the view in previous cases that a junior lienor could be so advanced over senior lienors, it has never before occurred to the judges of this court that it would be proper to do so. This court has in fact, in cases like this, previously followed the generally accepted rule, enforcing the true general intent and purpose of the recording acts, that the priority of liens depends upon when they were obtained, and that junior liens are always postponed to prior liens. *Hill* v. *Rixey*, 26 Gratt. (67 Va.) 72; *Eidson* v. *Huff*, 29 Gratt. (70 Va.) 342, are such cases.

These then are all the facts and the conclusion drawn therefrom by the majority: Here is the unrecorded deed of Tusing, which is invalid as to the judgment; here are two later liens, in every aspect valid, (a) Lohr's and Hildreth's and (b) debts of the creditors secured in the general assignment; ergo, this judgment lien, obtained after both of these valid liens attached to the property, is preferred in the distribution! To me this appears to be a *non sequitur*.

My view is that as between the valid specific liens and the general lien of the subsequent judgment, the specific recorded liens have priority; and because the fund for distribution is insufficient to pay these valid prior liens, the judgment lienor has no interest in the fund. There is nothing belonging to his debtor to which his lien can attach, because the fund is less than these valid prior liens. If there had been a surplus, the judgment creditor would have been entitled to satisfaction therefrom in preference to Mrs. Tusing,

the holder of the unrecorded deed of trust, because her lien is invalid as to the judgment. In effect, the decree appealed from directs the payment to Mrs. Tusing out of funds of the other lienors, because they had express notice of Mrs. Tusing's lien, and not out of funds from which the judgment could in any event be satisfied. Therefore, I think the decree is substantially right and should be affirmed.

WEST, J., concurs in the dissenting opinion of Prentis, P.