JAMES McCOY, APPELLANT, *v.* ZACHARIAH RHODES AND HIS WIFE, LUMINDA MONTGOMERY.

Where a bill in chancery alleges that certain lands were entered in the name of a third person, with a view to cover them from the creditors of the person who had entered them, and this allegation is denied in the answer and not sustained by proof, the bill *pro tanto* must be dismissed.

But where the party entered the lands in his own name, and afterwards conveyed them to this third person, but the deed to the third person was not recorded until after a judgment had been obtained by a creditor, and recorded in the parish where the land lies, against the party who made the entry, it will not be sufficient merely to set up in the answer that this third person furnished the money with which to purchase the lands. The equity must be proved.

By the laws of Louisiana, no notarial act concerning immovable property has effect against third persons until it shall have been recorded in the office of the judge of the parish where such property is situated. Therefore, where there was a judgment against the holder of the legal title, rendered in the intermediate time between the execution of a deed and its being recorded, and the judgment was first recorded, the subsequent recording of the deed could not abrogate the lien of the judgment.

The forty-seventh and forty-eighth rules of chancery practice explained.

THIS was an appeal from the Circuit Court of the United States for the District of Louisiana, sitting as a court of equity. It was a bill filed by McCoy against Rhodes and wife, under the following circumstances.

On the 6th of December, 1839, Rhodes purchased in his own name from the United States, under the preëmption law of 1838, and entered at the land-office at Ouachita, Louisiana, the following parcel of land: N. W. quarter of section 29, township 10 north, range 10 east, containing $160\frac{20}{100}$ acres; and paid for the same $1.25 per acre, making in the whole $200.25.

On the next day, viz. the 7th of December, 1839, Rhodes executed a deed for the above property to Eli Montgomery, a resident of the city of Natchez, in the State of Mississippi. The consideration stated in the deed was $1,500 cash. It was executed before Lewis F. Lanney, parish judge and *ex officio* notary public of the parish of Concordia, in Louisiana. This deed, however, was not recorded in the office of the judge of the parish until the 10th of December, 1841.

On the 10th of December, 1839, Rhodes entered at the land-office, in the name of Montgomery, the following pieces of land, viz.: S. W. quarter and west half of N. E. quarter of section 29, = $240\frac{31}{100}$ acres; S. E. quarter of section 30, = $161\frac{60}{100}$ acres; N. W. quarter of section 32, = 160 acres.

These three parcels were entered, as has just been remarked, in the name of Montgomery.

On the 24th of February, 1840, James H. McCoy obtained a judgment against Zachariah Rhodes in the Ninth District Court in the parish of Concordia for $1,546.27, with interest thereon

at the rate of eight per cent. from the 26th of March, 1839, till paid, and costs.

On the 7th of March, 1840, this judgment was duly recorded in the office of the parish judge and *ex officio* recorder of mortgages in and for the parish of Concordia.

On the 10th of December, 1841, Montgomery recorded the deed which had been executed to him by Rhodes on the 7th of December, 1839, and on the same day executed a deed of the three parcels of land which had been entered in his name, to Thomas J. Ford of Adams County and State of Mississippi. The consideration is stated in the deed to have been the following, viz.: — " The sum of three thousand dollars cash, which the said Eli Montgomery doth hereby acknowledge to have received, and the eight promissory notes of the said Thomas J. Ford, of even date herewith, and payable to the order of the said Eli Montgomery, for the amount and for the time as follows, viz.: First, a note for the sum of eight hundred dollars; second, a note for the sum of one thousand dollars; another note for the same sum of one thousand dollars, and a note for the sum of five hundred and thirty-three dollars thirty-three and one third cents, all payable on the 1st day of January, 1843; next, the two notes of the said Ford for the sum of one thousand dollars each, and also a note for the sum of thirteen hundred and thirty-three dollars thirty-three and one third cents, payable on the 1st day of January, 1844; and lastly, the note of the said Ford for the sum of three thousand three hundred and thirty three dollars thirty-three and one third cents, payable on the 1st day of January, 1845, all paraphed by me, the said notary, ' *Ne varietur*,' to identify them herewith, and payable at the office of the judge of the parish of Concordia."

The wife of Montgomery renounced all her rights of dower and rights of every kind in and to the property, which stood mortgaged for the payment of the notes.

On the 2d of November, 1842, Ford conveyed the property to Mrs. Luminda Rhodes, for the consideration of ten thousand dollars. Zachariah, the husband of Luminda, being present, declared that he accepted this act for his said wife, and " duly authorizes and assists her herein.".

On the 28th of January, 1845, James H. McCoy, a citizen of the State of Mississippi, filed his bill in the Circuit Court of the United States for the District of Louisiana, against Zachariah Rhodes and Luminda Montgomery his wife. It averred that Rhodes conspired with Montgomery to cheat and defraud the complainant; that the conveyance of the 7th of December, 1839, from Rhodes to Montgomery, was fraudulent

and void; that the entry of the lands on the 10th of December, in the name of Montgomery, was fictitious and fraudulent, and that the whole transaction was intended to benefit Rhodes and defraud his creditors; that Luminda, the wife of Rhodes, was the niece of Montgomery; that the recording of the judgment on the 7th of March, 1840, operated as a judicial mortgage upon all the lands; and prayed for a sale of the lands in order to discharge the judgment.

On the 3d of December, 1845, Rhodes and wife answered the bill. They admitted the entry of the lands, but averred that they were paid for with money actually furnished by Montgomery, and were intended to be his property; that Montgomery afterwards sold the lands to Ford, and that the respondents had no interest or participation therein; that after said sale was made, the notes of the said Ford were paid to this respondent, Luminda Montgomery, by the said Eli Montgomery, for moneys due to her from the estate of her deceased father, Joseph Montgomery, of whom the said Eli Montgomery was executor, or administrator of his estate, and that the said notes being secured by mortgage on all the said lands, and the said Ford having become embarrassed, and unable to pay the same, the lands were taken by this respondent, Luminda, in satisfaction of said notes, by agreement between these respondents and said Ford, and the conveyance made accordingly, for the sole use of this respondent, Luminda.

They then denied all fraud, combinations, deceptions, or cheating, &c., &c.

A general replication was put in and depositions were taken.

On the 24th of January, 1848, the cause came on to be heard on the bill, answers, exhibits, and proofs, when the Circuit Court decreed that the complainant's bill should be dismissed, with costs.

A petition for a rehearing was afterwards filed, alleging that the decree was erroneous, in this amongst other things, that the recording of McCoy's judgment was prior in date to the recording of the deed from Rhodes to Montgomery, by which deed the land entered on the 6th of December was conveyed to Montgomery; the judgment being recorded on the 7th of March, 1840, and the deed on the 10th of December, 1841.

But the court overruled the application for a rehearing, upon which the complainant appealed to this court.

It was argued by *Mr. Butterworth*, for the appellant, no counsel appearing for the appellees.

The points taken by the counsel for the appellant were the following: —

The claim of the plaintiff for a mortgage on the northwest quarter. of section 29, which was entered in the name of. Rhodes, has three distinct and separate foundations, any one of which is sufficient to support it.

Even if the statement in the answer, that Rhodes entered it as the agent of Eli Montgomery, &c., were true; or if he had transferred it, for a good and valuable consideration, to Montgomery, and in good faith; still, as the legal title did vest in Rhodes, and it was. not again divested, as to complainant, by transfer and record thereof, while the mortgage of complainant had, in the mean time, become fixed upon it; under the laws of Louisiana, there is no question that the mortgage-creditor's claim prevails over that of the vendee. (See Act of 1810, in Bullard and Curry's Digest, p. 596, § 7, No. 37. See Adelaide Mary *v.* François Lampré, 6 Rob. 315; 2 La. R.. 124; Gradenigo *v.* Wallett, 9 Rob. 16; Carraby *v.* Desmarre et al.; 7 Martin, N. S. 661; Duplessis *v.* Boutté, 11 La. R. 346; Lee *v.* Daramon and another, 3 Rob. 162.) But the case of Gravier et al. *v.* Baron et al., 4 La. R. 239, is among the earliest, and is one of the most important, cases on the subject. In that case, the land had been alienated in 1815; in 1824 a judgment was obtained against the vendor, which was recorded in the parish of St. Mary's, where the land lies. The public act of sale made in 1815 had not been recorded in St. Mary's parish before the judgment was there recorded. The claim of the creditor was, in that case, preferred to that of the vendee.

The English law, we know, is otherwise; but the decisions of our Supreme Court, on the construction of our statute law, which is a local law of property, must govern the case. The inconvenience of two different constructions, diametrically opposite, of the same local law of property, has ever been appreciated by this court; and doubtless it will be regarded in this case.

But the fact is, the assertion in the answer, that Rhodes was the agent of Eli Montgomery in making the entry of said quarter-section, is absolutely false, as appears from the record. He made that entry in virtue of the act of Congress of the 22d of June, 1838, granting preëmption rights to actual settlers, &c.

He was required, by the terms of the act of 1838, to swear that he actually settled on the land, occupied, and entered it for himself alone, and for no one else. (See 5 Statutes at Large, 251.) The register and receiver swear that he did enter the said quarter-section in virtue of his preëmption right, under said act of 1838.

McCoy v. Rhodes et al.

The depositions of the register and receiver, &c., taken in connection with the requirements of said act, are conclusive against yielding any credit whatever to the answer of defendants. We must beg leave to remark, however, that, if false statements are made in the answer, no perjury is thereby committed by Mrs. Luminda Montgomery, as she has not sworn to her answer at all. It was sworn to only by Rhodes, the other defendant.

It being established, then, that this land was entered by Rhodes for himself, in virtue of his preëmption right, under the act of 1838, of course there can be no pretence for insisting on the validity of the transfer of said quarter-section by Rhodes to Eli Montgomery. The answer says it was made in pursuance of a previous agreement to that effect. If any such previous agreement existed, and yet the land was entered according to law, the agreement was corrupt, and in violation of law, and the conveyance made in pursuance thereof is void to all intents and purposes.

Any thing done in violation of a prohibitory law (says our Louisiana Code, Art. 10) is null.

The same thing has ever been maintained in the courts of England and in this court. See Bank of United States v. Owens, 2 Peters, 538.

That no value passed from Montgomery to Rhodes for this transfer is too apparent, from all the circumstances of the case, to admit of a doubt.

The deed says, it is true, that the consideration of the transfer was $1,500 cash, in hand paid; but the answer negatives the existence of any such thing; it says, the entry was made by Rhodes, as the agent of Montgomery, and the transfer was made in pursuance of a previous agreement, without stating what was the consideration of the previous agreement; while the depositions of the register and receiver, and the documents attached to them, prove conclusively that Rhodes was entitled to enter said quarter-section in virtue of the preëmption granted him by the act of 1838, and that he did so enter it.

All this certainly proves, that no consideration ever passed from Montgomery to Rhodes, for said sale and transfer of said northwest quarter of section No. 29, T. 10, R. 10.

It must be apparent, then, that the said quarter-section, by the entry thereof in the name of Rhodes, on the 6th of December, 1839, in virtue of his preëmption right under the act of 1838, vested in him all the title, both legal and equitable, to said tract of land. It is also equally apparent, that no consideration was given by Eli Montgomery for the transfer thereof to him, in December, 1839; and also, that, even if said transfer

had been made for a good, adequate, and valuable considera-tion, and in good faith, yet, under the laws of Louisiana, in consequence of the failure to record the deed in Concordia until long after the judgment of complainant had been there record-ed, it was of no validity whatever as to the rights of complain-ant, as to whom the said sale is the same as if it had never been made. See 6 Robinson, 315.

What has been said above is peculiar to the lot or quarter-section of land entered in the name of Rhodes.

We have some things still to say, which are alike applicable to all the lands on which complainant claims a mortgage.

In the answer, it is stated that the notes of Ford were paid by Eli Montgomery to Luminda Montgomery, in satisfaction of moneys due her from her father's estate, &c.; and that these notes were given by her to Ford, as the price of the transfer from him to her of the lands mentioned in the bill.

No proof whatever has been offered in support of the allega-tion of the answer, that the notes were paid by Eli Montgom-ery to Luminda, in satisfaction of moneys due her from her father's estate. The truth of the answer was put in issue by the replication; and therefore this allegation of the answer re-quires proof. See opinion of Chancellor Kent, in Hart *v.* Ten Eyck, 2 Johns. Ch. 89, 90, and authorities there referred to:—

"When the answer is put in issue, the defendant must sup-port by proof all the facts upon which he means to insist, while the plaintiff may rely upon every fact admitted, which he conceives material, without being bound to the admission of any others. But when the answer is offered in evidence at law, no part of it is immediately in issue. It is only parcel of the evidence, and if one side introduce it, the other may insist upon the whole being read; and if read, it does not necessa-rily follow that it must be wholly admitted as true, or wholly rejected as false. The credit of any and every part is left to the jury, who are not bound to believe equally the whole an-swer, but may believe what makes against, without believing what makes for, the party who swears in the answer. This rule is applicable to every kind of evidence, and has been often acknowledged by the judges at law."

"The distinction, therefore," as Evans says, "is not between courts of law and equity, but between pleadings and evidence. If an answer is introduced collaterally, it ought to be treated precisely as in a court of law," &c.

Here it is admitted by the answer, that the notes were given to Luminda Montgomery; and though stated to be in pay-ment, &c., yet no proof is administered of the indebtedness of Eli Montgomery, and therefore, under all the circumstances of the case, the allegations of fraud seem to be fully proven.

McCoy *v.* Rhodes et al.

As the matter stands, it is clear that Luminda Montgomery gave no consideration for the notes; and by consequence it is also true that Eli Montgomery gave no consideration for the land.

The conclusion deduced from this rule of evidence, as applicable to this case, is much strengthened by the fact, that an important part of the answer has been disproved by two credible witnesses, and by documents; and therefore the rule applies to the whole answer, that, if a witness is proven to have wilfully sworn falsely in one particular, his whole testimony is discredited.

The truth is, the lands were always, in fact, the property of Zachariah Rhodes, except while the title was in Ford, during which time he held the notes of Ford for the unpaid price. These notes were finally given up to Ford in consideration of a transfer of the land, &c.

But even if it were true, as is stated in the answer, that the notes of Ford were given by Eli Montgomery to Luminda in satisfaction of a just debt due her for moneys coming from her father's estate, still it would form no ground for dismissing the complainant's bill; because the lands were acquired on the 7th of November, 1842, during the existence of the community between the defendants; and although the deed is taken in the name of the wife, and even if the price was paid with the proper funds or effects of the wife, they are still the property of the community. (See Civil Code of Louisiana, Art. 2371 : see also 10 La. Rep. 148; Ib. 181.)

If the defendant Luminda Montgomery has applied her proper effects in the purchase of the lands, (which is denied by complainant,) she has a tacit mortgage on all the immovable property of her husband, and on the immovables of the community (which includes these lands), for the satisfaction thereof. This claim she must set up against the complainant (after suit instituted against her husband for separation of property) by original or cross bill, &c.

She has not set it up, nor could she be heard to set it up in an answer.

We think it fully established, then, that, even if the acquisition of the lands was made with the funds of Luminda Montgomery, and the deed taken in her own name, as it was, still she cannot lawfully oppose the foreclosure of complainant's mortgage.

But it is not true that the lands were acquired with her funds or effects. In any form of action against her husband, his heirs, or his creditors, it is indispensably necessary for her to establish, by proof, that the property was acquired with her

12*

funds or effects. This has not been done in this case, nor could it be done, because it is not true.

In the answer it is stated that the debt due complainant was contracted by Zachariah Rhodes prior to his intermarriage with Luminda Montgomery, which took place on the 28th of December, 1834; and that therefore it cannot be satisfied out of the effects of the community.

The record shows, that the judgment of McCoy against Rhodes was rendered on the 24th day of February, 1840, with interest thereon from the 26th day of March, 1839. If the debt was contracted prior to the 26th of March, 1839, it does not appear by any evidence in the record; and the presumption of law is, that that is the date of its origin.

If the fact was otherwise, the respondents should show it by evidence. The answer, as above said, cannot establish the fact.

Since the above was written, we find, on inspection of the papers in the case, in the Circuit Court, that a copy of the record of the suit of McCoy v. Rhodes, in the State court, is on file, and we suppose it was offered in evidence. If this is true, it appears by that record that the debt was contracted by Rhodes on the 12th of August, 1838.

We therefore rely on the following propositions as established: —

1. The land which is designated as the northwest quarter of section 29, in township 10 of range 10, was entered at the land-office, and purchased by Zachariah Rhodes in his own name, and for his own use, from the United States, on the 6th day of December, 1839, in virtue of a settlement thereon, and preëmption right granted him under the act of Congress of 1838, granting preëmption rights, &c.

2. That said quarter-section of land, though nominally conveyed, by public act dated on the 7th day of December, 1839, from Zachariah Rhodes to Eli Montgomery, was, because the conveyance to Montgomery was fraudulent, still actually the property of Rhodes, until the 10th of December, 1841, when it was, at the instance of said Rhodes, conveyed by Eli Montgomery to Thomas J. Ford.

3. That the said transfer to Montgomery did not have any effect as against complainant; because the said conveyance was made without any lawful consideration, and with intention of defrauding creditors; and also because the deed of transfer was not recorded in the conveyance office of the parish of Concordia, until long after the judgment of complainant had been recorded in the mortgage office of said parish, within whose limits, at that time, the land lay.

Note.— Since the recording of the judgment of complainant, and since the recording of the conveyance of Rhodes to Montgomery, that part of the then parish of Concordia in which the land lies has been stricken off from Concordia, and it now forms a part of the parish of Tensas.

4. That the entry of the other lands in the name of Eli Montgomery, made by Rhodes on the 10th day of December, 1839, at the land-office at Monroe, was, in truth, an entry and purchase of said lands by said Rhodes for his own use and benefit; and that the use of the name of the said Montgomery was intended as, and was, a fraud upon the creditors of Rhodes; and consequently said lands, from the date of the purchase until the 10th day of December, 1841, (when they were conveyed and sold by Eli Montgomery, at the instance of said Rhodes, to Thomas J. Ford,) remained and continued to be the property of Zachariah Rhodes. That consequently, the judgment of complainant operated as a mortgage on all said lands from the date of its record in the mortgage office of Concordia, to wit, 7th March, 1840.

5. That from the 2d day of November, 1842, when all said lands mentioned in the bill were conveyed by Thomas J. Ford to Luminda Montgomery, the lands all became the property of the community existing between said Zachariah Rhodes and Luminda Montgomery, his wife; and as such, (even if not, before that time, subject to the debt due complainant,) became affected with the mortgage claim set up in the bill.

Note.— The division of the parish of Concordia did not take place till 17th March, 1843. See Session Acts of 1843, page 35.

(The judgment of complainant was recorded in Concordia on the 7th of March, 1840.)

6. That the judicial mortgage of complainant attached to, and became fixed on, all the lands mentioned in the bill, from and after the 7th day of March, 1840, the date on which it was recorded.

Mr. Justice CATRON delivered the opinion of the court.

McCoy recovered a judgment against Rhodes, in a State court of Louisiana, for the sum of $1,546, on the 24th of February, 1840; and on the 7th of March following this judgment was recorded in the mortgage office of Concordia parish. The bill seeks to subject certain lands in possession of Rhodes to satisfy the judgment. Three of the tracts were entered as United States lands, in the name of Eli Montgomery, but which the bill alleges were the property of Rhodes, and covered by Montgomery's title to prevent Rhodes's creditors from reaching

them.    This is directly denied by the answer, and, there being no proof to the contrary, complainant must fail as respects these three parcels.    The bill also seeks to subject a fourth tract, entered by Rhodes (December 6, 1839) in his own name, and conveyed to Montgomery next day, December 7, 1839. This deed was first recorded, in the proper office of Concordia, December 10, 1841; and is for the northwest quarter of section No. 29, T. 10, R. 10 east, containing $160\frac{20}{100}$ acres.

On the 10th of December, 1841, Montgomery conveyed the four tracts to Thomas J. Ford, who afterwards (November 2, 1842) rescinded the contract of purchase, and conveyed to Luminda Montgomery Rhodes, wife of Zachariah Rhodes.  Rhodes and wife are the only defendants.    In regard to the northwest quarter of section No. 29, they jointly answer and say : —

" True it is that this respondent, Zachariah Rhodes, did, on the 6th day of December, 1839, enter at the land-office at Ouachita, Louisiana, the northwest quarter of section No. 29, in township No. 10 of range 10 east, and that he took a receipt for two hundred dollars and twenty-five cents, the price thereof under the laws of the United States; but these respondents aver that the entry aforesaid was made by this respondent, Rhodes, for Eli Montgomery, of the State of Mississippi; that the said Eli Montgomery did furnish the money to pay for the same, and the same was actually paid for out of the moneys so furnished by the said Montgomery; and that the convevance of the same to the said Montgomery by this responden     cde as set forth in the said complainant's bill, was made to compiete the legal title in his, said Montgomery's name, according to the original intent of all parties, and as equity and justice required; this respondent, Z. Rhodes, having only acted as the agent of the said Montgomery, and for his use, in making said entry, and paying the said money; and not with any view to cheat, defraud, or wrong the said plaintiff, as is falsely charged in said plaintiff's bill."

Respondents admit that the entry was made in Rhodes's own name, and was, when made, *primâ facie* liable to be seized on execution as his property; but then, in avoidance of this admitted liability, they allege that Montgomery's money was paid into the land-office, and that this was done in fulfilment of some previous agreement between Rhodes and Montgomery, by which an equity existed in the latter to have the benefit of Rhodes's preëmption right of entry, as an actual settler.

There is no proof in the cause of the facts above set forth by the answer.  That Montgomery furnished the money paid, and that the land was entered for his use under a previous

agreement, are facts within the peculiar knowledge of respondents; they are not responsive to charges made by the bill, but set up as an independent defence. In such case the rule is, "that a discharge set up in avoidance, coupled with an admitted liability, if the answer be replied to, (as here it is,) must be proved by the defendant."

This is the settled rule. Hart v. Ten Eyck, 2 Johns. Ch. 88; Napier v. Elam, 6 Yerger, 112.

As the respondents cannot make evidence for themselves, and thereby establish an equity in Montgomery, it follows that the defence must fail so far as the equity set forth is relied on. Having disposed of this part of the controversy on the pleadings and want of proof, it becomes unnecessary to examine what bearing the act of July 22, 1838, c. 119, (5 Stat. at Large, 251,) has on the foregoing facts.

The next ground of defence relied on is the conveyance made by Rhodes to Montgomery of the 7th of December, 1839. It was recorded December 10, 1841. According to the statute law of Louisiana, no notarial act concerning immovable property has effect against third persons, until the same shall have been recorded in the office of the judge of the parish where such property is situated. In relation to third persons, the act of sale not recorded is considered as void.

For an exposition of the Louisiana statute we refer to the case of Gravier v. Baron (4 Louisiana R. 239), and which has been since followed by the Supreme Court of Louisiana. The deed from Rhodes to Montgomery being a notarial act, it took effect on the 10th of December, 1841, against McCoy, the judgment creditor; and as the lien of the judgment, or judicial mortgage, attached the 24th of February, 1840, when the title was in Rhodes the debtor, this deed is of no force as against the judgment, nor are the subsequent deeds founded on it; and therefore McCoy has a right to have the northwest quarter of section No. 29 sold.

Some supposed difficulty exists on the head of jurisdiction for want of parties, Eli Montgomery not being before the court. We do not deem him a necessary party to this suit; he has no interest in the land, and no right to contest the validity of the judgment against Rhodes. And, in the next place, we are of opinion that all necessary parties were before the Circuit Court according to the forty-seventh and forty-eighth rules of chancery practice published by us in 1842, as the bill alleges that Eli Montgomery permanently resided beyond the jurisdiction of the court; which was not contested by plea, nor was any objection made below against proceeding to a final decree for want of parties.

For the reasons stated, it is ordered that the decree dismiss-ing the bill be reversed, and that the cause be remanded to the Circuit Court, there to be proceeded in according to this opinion.

## Order.

This cause came on to be heard on the transcript of the rec-ord from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, for further proceedings to be had therein, in conformity to the opinion of this court.