# Richmond.

## SLATER ET ALS. V. MOORE ET ALS.

### APRIL 11th, 1889.

1. INSTRUMENTS—*Alterations—Burden of explanation.*—Every alteration on face of written instrument detracts from its credit and makes it suspicious; and this suspicion the party claiming under it is ordinarily bound to remove. *Elgin* v. *Hall,* 82 Va., 680.

2. UNRECORDED DEEDS —*Purchasers for value without notice.*—A deed is void as against creditors " until and except from the time it is duly admitted to record." Code 1873, sec. 5, p. 897; Code 1887, sec. 2465. And it is only deeds recorded within sixty days from their date of acknowledgment that, upon recordation, relate back and are valid as of the date of acknowledgment. Code 1873, sec. 7, p. 897. (Twenty days, by Code 1887, sec. 2467.)

3. FRAUD—*Grantor—Grantee—Third party.*—If grantee or third party must suffer from the grantor's fraud, the grantee, who put it in the grantor's power to commit the fraud, must bear the consequences.

4. FRAUDULENT CONVEYANCES—*Case at bar.*—Defendant, representing himself as the owner of certain land, bought goods on credit. The record showed the title to be in his name. Later he had recorded a conveyance of the land to his daughter, the consideration being expressed to be one dollar, love and affection. The conveyance was of date prior to the purchase. A check was presented by him, which he insisted was the real consideration. It bore marks of unexplained alterations and erasures, and draftsman testified that the check was not mentioned or produced when conveyance was drawn. Grantor continued to occupy the house on the land after the execution of the deed, and paid taxes on it in his own name. When it was executed, he took it and locked it up, where it remained until recorded. Shortly after the conveyance was recorded, he assigned his effects for benefit of his creditors, the proceeds whereof barely paid the rent for his store: *held,* the conveyances fraudulent and void as to creditors.

Appeal from decree of corporation court of city of Norfolk, rendered January 28th, 1888, in a suit in equity, wherein Slater, Myers & Co. are complainants, and Peter Moore is defendant. Opinion states the case.

*Burroughs & Bro.* and *John Neely*, for the appellants.

*Tunstall & Thom*, for the appellee.

Fauntleroy, J., delivered the opinion of the court.

The record discloses that, in August, 1885, Peter Moore lived in the city of Norfolk, Virginia, and resided in a house on the corner of Cumberland and Washington streets, numbered 30 Cumberland street. The complainants were wholesale liquor merchants, residing and doing business in the city of Richmond, Va., and in the city of Baltimore, Md.

In the latter part of July and the first part of August of that year, Peter Moore addressed letters to the complainants and others, wholesale liquor merchants, stating that he was about to go into business, and making inquiries as to prices of liquors. In the latter part of July, 1885, or on the first day of August, 1885, a salesman representing the firm of E. B. Bruce & Co., in response to the letters of the said Peter Moore, visited Peter Moore at his residence, No. 30 Cumberland street, Norfolk, at which interview Peter Moore stated that he was about to go into business; that he owned the house No. 30 Cumberland street, in which he lived, and which he valued at $5,000 00; that he wished to buy, on four months time, from E. B. Bruce & Co. to the extent of *ten* per cent. on the value of the house, and that he would buy from no other house. An order for $490 00 worth of goods was filled out, and a duplicate left with Peter Moore. On the 14th of August, 1885, the said salesman returned and visited Peter Moore at his residence, No. 30 Cumberland street, and went with him to his store, at

the corner of Bute and Hawk streets.   On their way to the store he informed the salesman that he had written to his house (Bruce & Co.) the day before to send the goods.   The salesman telegraphed his house to send the goods, which came the next day, and the salesman saw them received and put up in Peter Moore's store on the 16th of August, 1885.   On the 5th of March, 1886, George A. Lathrop & Co. sold to Peter Moore a bill of goods, amounting to $256 63, upon his representations that he owned the house and lot No. 30 Cumberland street, and, upon an examination of the records of the clerk's office of the corporation court of Norfolk city, where they found that the said house and lot, No. 30 Cumberland street, stood in the name and as the absolute property of Peter Moore.   On the 1st of November, 1885, Slater, Myers & Co., wholesale merchants in Richmond, Va., sold and delivered to Peter Moore, doing business in Norfolk, Va., goods of the value of $407 90 upon four months time; on the 21st of January, 1886, they sold and delivered to the said Peter Moore other goods of the value of $199 48 on ninety days time, and on the 4th day of February, 1886, they sold and delivered to the said Peter Moore other goods to the value of $61 50.   On the 10th day of March, 1886, E. B. Bruce & Co. sold and delivered to said Peter Moore a bill of goods amounting to $91 25.   All of these said debts were contrated by Peter Moore before and on the 10th day of March, 1886, and upon his express representations that he owned the house No. 30 Cumberland street, and upon the faith that the public records, which showed title in Peter Moore, were true.   On the 10th day of March, 1886, Peter Moore placed upon record a deed executed on the 17th of August, 1885, conveying the house and lot No. 30 Cumberland street to his daughter, Martha V. Moore, " in consideration of one dollar and the love and good will " he bears his daughter.   Shortly after this he made an assignment of all his stock of goods in the store he was then conducting, the proceeds of which were not enough to pay

more than the rent due the landlord.    Peter Moore is insolvent.  . The appellants instituted this suit, alleging the facts aforesaid, and charging that the deed of August 17th, 1885, from Peter Moore to his daughter, Martha V. Moore, is a mere voluntary deed of gift, and not based upon a consideration deemed valuable in law; and that the said deed was absolutely void and of no effect whatever, except from the 10th day of March, 1886, the day of its recordation, as against their aforesaid debts against Peter Moore contracted previous to that said debt, and that the said deed was made with the intent to hinder, delay and defraud the creditors of Peter Moore, the grantor.    The prayer is, that the said deed of August 17th, 1885, may be declared null and void, and be set aside, and that the said house and lot No. 30 Cumberland street may be sold and the proceeds applied to the satisfaction of their said debts against the said Peter Moore.    The bill makes Peter Moore and Martha V. Moore parties defendant, and calls for answers from them, but waives the sanction of an oath.    In their answers it is claimed, that the deed was made August 17th, 1885, for a valuable consideration, which was the surrender on that day of a check for $1,600 00, drawn by Peter Moore on the Exchange National bank of Norfolk March 29th, 1884, in favor of his daughter, Martha V. Moore, and never presented at the request of the drawer.    During the progress of the cause, Martha V. Moore, the grantee in the deed, died, leaving the grantor her heir at law, and the cause was duly revived against Peter Moore by *scire facias.* At the hearing upon the bill, petitions, answers, and depositions, the court dismissed the bill and petitions, with costs against the complainants.    The deed of August 17th, 1885, is, upon its face, a voluntary deed; but the defendants claim, that there was a valuable consideration in the check for $1,600 00, which, they say, was surrendered at the time the deed was executed.    The check, when produced in evidence, had an alteration or erasure in material parts of it.    The figures

$1,600, on the upper left hand corner of the check, appear to have been tampered with, and in the body of it, where the words "sixteen hundred" are written, it had a plain erasure, obvious to the naked eye. No evidence was offered to account for the alterations and suspicious appearances of the check, and, when it was offered in evidence, the party in whose favor it was drawn, Martha V. Moore, was dead, and her father, Peter Moore, the drawer of the check, as her heir at law and privy in estate, now seeks to avail himself of it to support a valuable consideration as a basis for his voluntary deed. "Every alteration on the face of a written instrument detracts from its credit, and renders it suspicious; and this suspicion the party claiming under it is ordinarily held bound to remove." 1 Greenleaf's Evidence, sec. 564; *Approved*, in *Priest* v. *Whitacre*, 78 Va. (Hansbrough), 165, and *Elgin* v. *Hall*, 82 Va. (Hansbrough), 680; *Angle* v. *N. W. Mutual Life Ins. Co.*, 92 U. S., 342; *Batchelder* v. *White*, 80 Va. (Hansbrough), 103. Warren, who drew the deed, testifies, that when he drew the deed the check was not mentioned or referred to, and that he never saw it until after this suit was brought to set aside the deed as a voluntary deed without any valuable consideration.

We are of opinion, that the proffer in evidence of this defaced, erased, and unexplained check, which was not mentioned or referred to at the time that the deed was made, is insufficient to establish a valuable consideration for the deed. The deed was made August 17th, 1885, and was instantly handed back to the grantor, Peter Moore, who locked it up in his iron safe and kept it there until he put it to record, on the 10th day of March, 1886. The deed was not only a voluntary unrecorded deed up to that date, but the facts in evidence are such as to convince the mind, without doubt, that the deed was actually fraudulent, and was made as a trick or contrivance to elude the lawful pursuit of his creditors, and, indeed, that he began and continued business with the deliberate purpose of obtaining credit upon the house No. 30 Cumberland

street, and at the same time of having it in his power, by means of this deed, to prevent those from whom he should obtain credit upon the faith and extent of his ownership of the house, from subjecting it to the payment of their debts thus contracted.

Peter Moore having contracted a debt on the faith of his ownership of the house, he immediately thereafter executed the deed of August 17th, 1885, to his daughter for the house, who leaves it in his custody and concealment unrecorded, and he continued to buy goods on the faith of his title of record, to which he appealed, and referred his creditors for assurance of his asserted title and ownership of the house. He continued to occupy the house after the execution of the deed just as before, and to pay the taxes upon it as his own property. Even if the daughter acted innocently of her father's fraudulent intent, yet she made Peter Moore the custodian of her secret title deed, and enabled him, by concealing it, to obtain credit on the faith of his asserted and recorded ownership of the property, and she must be held to constructive notice of his fraudulent intent and scheme; and if one of two innocent parties must suffer by the fraud of the grantor, she, the grantee, who put it in the power of the grantor to commit the injury, must bear the consequence. Story on Agency, sec. 56, 264; *Royal British Bank* v. *Tarquand*, 85 E. C. L., 248; *Batchelder* v. *White*, 80 Va., 103, and cases there cited; Pomeroy, treating of *notice* and its effect, sec. 687; *Briggs* v. *Jones*, L. R. 10, Eq. 92.

By the terms and the intendment of section 5, chapter 114, Code of 1873, an unrecorded deed speaks only from the date of its recordation, and is void as against creditors for value and without notice " until and except from the time that it is duly admitted to record." The deed of August 17th, 1885, being a voluntary and unrecorded deed, had no existence until the 10th of March, 1886, as against *bona fide* creditors, although it were untainted with fraud, and good between the grantor

and grantee as of its date, and it is only deeds which are recorded within sixty days from their date of. acknowledgment, that, upon recordation, relate back and are valid as of their date of acknowledgment.   Sec. 7, ch. 114, Code 1873. Though, as between the grantor and the grantee, the deed required neither recordation nor a valuable consideration, yet it is the policy of the law as to the registry of deeds, to protect creditors and purchasers against "*secret trusts and latent titles*" by requiring the public records to exhibit a true and accurate assurance of title or ownership of lands and all encumbrances affecting them, so that all persons dealing with the land, or in respect thereto, may be able to discover in whom the title is vested, and anything affecting the title. 1 Pomeroy's Equi., sec. 649; *Anderson* v. *Anderson*, 2 Call, 198; *Harvey* v. *Alexander*, 1 Rand., 240; *Neslin* v. *Wells*, 104 U. S., 428–429; Bump on Fraud, C., 3 Ed., p. 39.

The deed of August 17th, 1885, is a fraudulent deed, and it must be vacated and set aside as having been made by Peter Moore with the intent to hinder, delay, and defraud the appellants, his *bona fide* creditors.

. The decree appealed from is wholly erroneous, and must be reversed and annulled, and the cause remanded to the corporation court of Norfolk for further proceedings in accordance with this opinion.

DECREE REVERSED.