**CAVALIER SERVICE CORPORATION,**
a Successor Trustee, Plaintiff,

v.

**Michael T. WISE, United States of America, Patsy J. Frango, Rosa Leigh Frango, Defendants.**

Civ. A. No. 86–194–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 2, 1986.

**32**

Peter G. Zemanian, Willcox & Savage, Norfolk, Va., for plaintiff.

Joel P. Crowe, Babb, Oast, Hook & Crowe, Mall, Portsmouth, Va., for Wise.

Larry W. Shelton, Asst. U.S. Atty., Norfolk, Va., Tryna A. Kwasny, U.S. Dept. Justice, Washington, D.C., for U.S.

Robert H. Romm, Reed, Beaman & Romm, Norfolk, Va., for Frango.

## MEMORANDUM OPINION

KELLAM, Senior District Judge.

This action was originally brought in the Circuit Court for the City of Norfolk, but since the plaintiff sought an interpleader action against the United States, the defendants removed the action to the federal court pursuant to 28 U.S.C. § 1444. Defendants Frango also filed a cross-claim against defendant Wise for any interest and penalties incurred by the Frangos for the delay in transferring the proceeds from the Trustee's sale to the United States; for recovery of their attorney's fees in this action; and for attorney's fees for the plaintiff Cavalier Service Corporation.

### I.

Plaintiff, Cavalier Service Corporation, was appointed Successor Trustee under a Deed of Trust assumed by defendants P.J. and Rosa Leigh Frango dated June 12, 1975. The deed of trust secured the payment of a promissory note by Clifford T. Lenz and wife, and assumed by the Frangos. Upon default in the payment of the promissory note, a trustee sale was conducted and the proceeds of the sale, after satisfaction of the promissory note, were held by the Trustee and subsequently interpleaded in this action. At the time of the sale, the property was subject to two liens—one a *lis pendens* in favor of defendant Michael T. Wise, docketed February 5, 1985 for $50,000 and subsequently reduced to judgment on September 18, 1985. The

·other lien was a federal tax lien docketed March 11, 1985 in favor of the Internal Revenue Service against the Frangos for $46,739.75, plus interest. The tax lien arose when the Secretary of the Treasury made two assessments against the Frangos for unpaid federal taxes for the years 1978 and 1979. The Frangos refused to pay the delinquent taxes and pursuant to 26 U.S.C. § 6321, a federal tax lien arose against all property and rights to property belonging to the Frangos. According to 26 U.S.C. § 6322 the lien arose at the time of assessment, December 3, 1984, and later notice of the federal tax lien was filed with the Clerk of the Circuit Court of Norfolk on March 11, 1985.

After the Trustee's sale, the plaintiff paid the holder of the above-mentioned promissory note the balance due; paid itself $1,000 for Trustee's commission; paid $1,250.00 to Willcox and Savage for legal fees, and paid the costs of sale. Afterwards, the plaintiff was in possession of a $19,182.27 surplus from the Trustee's sale. As a result, a dispute arose between defendants Wise and the United States as to who was entitled to the surplus funds. In other words, whose lien, the *lis pendens* or the federal tax lien, had priority and was entitled to receive the surplus proceeds from the Trustee. Plaintiff instituted this interpleader action to have the Court determine the priorities of the adverse claimants. In addition, plaintiff seeks to receive an additional $1,000 in Trustee's commission; and to recover additional attorney's fees amounting to $3,190.84 for instituting the interpleader action. Wise and the United States have each filed motions for summary judgment based on the pleadings.

## II.

A federal tax lien is a creature of federal law and is a "formidable arsenal of collection tools" necessary "to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). The importance of ob-

taining revenues to satisfy the nation's obligations justifies the "extraordinary priority accorded federal tax liens." *United States v. Kimbell Food, Inc.*, 440 U.S. 715, 734, 99 S.Ct. 1448, 1462, 59 L.Ed.2d 711 (1979). To collect delinquent taxes owed to the government, Congress enacted the Federal Tax Lien Act of 1966. 26 U.S.C. § 6321, *et. seq.* If any person refuses to pay a tax once it has been assessed, then the government possesses a lien "upon all property and rights to property, whether real or personal" belonging to the delinquent taxpayer. 26 U.S.C. § 6321. *Air Power, Inc. v. United States*, 741 F.2d 53, 54 (4th Cir.1984). In order to ensure the superiority of these federal tax liens over other liens the code provides that

> the lien imposed by section *6321 shall rise at the time the assessment is made and shall continue until the liability for the amount so assessed* (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

26 U.S.C. § 6322 (emphasis added). A federal tax lien generally arises or attaches at the time the tax assessment is made and thus a federal tax lien takes priority over all other liens arising subsequent to the assessment of the delinquent tax. *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 88, 83 S.Ct. 1651, 1654–55, 10 L.Ed.2d 770 (1963).

The Internal Revenue Code's basic scheme is to provide priority for federal tax liens over competing interests; however, there are certain classes of creditors—mortagees, pledgees, purchasers and judgment creditors—who must have actual notice of the tax lien before the tax lien has priority. *Pioneer, supra* 83 S.Ct. at 1655. 26 U.S.C. § 6323(a). *First National Bank of Norfolk v. Norfolk & Western Railway Co.*, 327 F.Supp. 196 (D.C.Va.1871).

Federal law governs the priority of a tax lien against all other claims to the property. *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 49–50, 71 S.Ct. 111, 112–13, 95 L.Ed. 53 (1950). The priority of the federal tax lien over other

lawful debts is generally governed by the rule "the first in time is the first in right." *Pioneer, supra* 83 S.Ct. at 1654; *Air Power, Inc., supra* at 54. The United States Supreme Court in *Security Trust, supra* 71 S.Ct. at 114, held that a federal tax lien is prior to an inchoate attachment lien that has not ripened into a judgment at the time the federal tax lien attached. Thus, federal tax liens are superior to inchoate attachment liens. *See also United States v. City of New Britain*, 347 U.S. 81, 86, 74 S.Ct. 367, 370–71, 98 L.Ed. 520 (1954). In *Security Trust, supra*, the Court concluded that federal tax liens were superior to an attachment lien when notice of the federal tax lien was recorded subsequent to the date of the attachment but prior to the date that the attachment was reduced to judgment.

The Court held that

The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. *Thus the attachment line is contingent or inchoate—merely a lis pendens notice that a right to perfect a lien exists.*

*Security Trust & Savings Bank, supra* 340 U.S. at 50, 71 S.Ct. at 113. (emphasis added).

In *Security Trust, supra*, the Supreme Court referred to the attachment lien as an "inchoate" lien. An inchoate lien is a lien which may become certain as to amount, identity of lienor, or property involved at some time subsequent to the notice of the federal tax lien. *New Britain, supra* 74 S.Ct. at 371.

■ These inchoate liens cannot displace federal liens. *New Britain, supra* at 371. If these inchoate liens were allowed to have priority over tax liens

a state could affect the standing of federal liens, contrary to the established doctrine, simply be causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined.

*New Britain, supra* at 86, 74 S.Ct. at 370–71. An interest is choate when "there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien is established." *Pioneer, supra* 83 S.Ct. at 1655; *New Britain, supra* 74 S.Ct. at 369. It is a matter of federal law whether a competing state lien is sufficiently choate to defeat a later arising federal tax lien. *Pioneer, supra* 83 S.Ct. at 1655; *Air Power, Inc., supra* at 55 n. 2. The Fourth Circuit has also acknowledged that there are certain federal threshold requirements of choateness that must be satisfied before a state lien can qualify for priority over a federal tax lien. *Air Power, Inc., supra* at 55. For instance, the Supreme Court held that where a garnisher had already attached proceeds but where a federal tax lien was filed with notice *before* the garnisher's claim was reduced to judgment, the federal tax lien was superior both to garnisher's lien and to the court's allowance to garnishee for attorney's fees. *United States v. Liverpool & London & Globe Insurance Company*, 348 U.S. 215, 217, 75 S.Ct. 247, 248, 99 L.Ed. 268 (1955). The Fourth Circuit citing *Liverpool, supra* held that where the United States had already served notice of the federal lien on taxpayer's debtor before the taxpayer's bankruptcy, then the United States' interest was superior. *United States v. Eiland*, 223 F.2d 118, 123 (4th Cir.1955).

### III.

■ The Court finds that the Supreme Court decision in *Security Trust, supra*, is controlling in this case. Here, the government assessed a delinquent tax against the Frangos on December 3, 1984. At that time a lien in favor of the United States for the $46,739.75 worth of delinquent taxes arose. 26 U.S.C. § 6322. Then on February 5, 1985, defendant Wise docketed his *lis pendens* for $50,000. Notice of the federal tax lien was docketed on March 11,

1985 in accordance with 26 U.S.C. § 6323(a) and 55–142.1 of the Code of Virginia. Thereafter, defendant Wise's *lis pendens* was reduced to judgment on September 18, 1985. This case, like *Security Trust, supra* involves an inchoate lien which was filed before the notice of tax lien but which was reduced to judgment after the notice of the tax lien had been duly recorded as required by statute. The Supreme Court earlier held that the attachment lien was inchoate and gave the creditor no rights against the property until the creditor reduced the lien to a judgment. *Security Trust, supra* at 50. Consequently, Wise did not have any rights against the real estate until his *lis pendens* was reduced to a judgment in September of 1985. Wise's rights to the property arose *after* the tax lien was already recorded.

The Supreme Court went on to analyze an inchoate attachment lien to a *lis pendens* which merely gives "notice that a right to perfect a lien exists." *Id.* The Supreme Court's comparison of a *lis pendens* and an attachment lien indicates that both are inchoate liens that are not superior to federal tax liens since they are inchoate and merely puts one on notice that a perfected interest might arise at a later time. The attachment lien in *Security Trust* was inchoate and inferior to the federal tax lien; likewise, the *lis pendens* in this case is also inferior to the tax lien.

Furthermore, the *lis pendens* does not satisfy the choateness requirements articulated in *Pioneer, supra* 83 S.Ct. at 1655; *New Britain, supra* 74 S.Ct. at 369. Specifically, a lien must be reduced to judgment before it is enforceable and Wise's *lis pendens* was not reduced to a judgment until September 18, 1985. Wise's *lis pendens* was an inchoate interest on March 11, 1985 when the notice of the tax lien was docketed; thus, the federal tax is superior. Federal tax liens take priority over inchoate state created lines. *Pioneer, supra* at 1655.

## IV.

Wise asserts that the filing of the *lis pendens* gave notice to the world that he had a claim against the real property in question, and anyone who accepted a conveyance of that property would take subject to his claim if in fact he thereafter established he had an ownership interest in the property. That is, that the Court's final determination would relate back to the time of filing of the *lis pendens*. But what he overlooks is that even if he is correct that subsequent purchasers are on notice, the filing of the *lis pendens* does not affect creditors of the Frangos. The filing of a *lis pendens* is simply to give notice to future purchasers or grantees of the claim. The fact is, as the record shows, Wise only obtained a money judgment.

As is shown by the pleadings, after Wise filed his *lis pendens* and before he obtained a judgment, the United States duly docketed its lien as required by statute. Other than to show that he had a claim, there is nothing in the pleadings to show the basis or grounds for Wise's claim. In his brief filed herein, Wise asserts that he had a contract with the Frangos to purchase the property sold at the Trustee's sale. However, there is no pleading or evidence to establish the date, terms or conditions of such a contract, nor is there anything to show the basis, grounds, purpose or reason for the subsequent entry of a judgment in his favor against the Frangos. In his answer filed herein, Wise admits the allegations of the amended bill of interpleader filed herein, except as to paragraph 8 which is the assertion of the need for the assistance of the court. He filed a motion for summary judgment in which he asserted there was no genuine issue of any material fact.

Wise makes no assertion, nor does he even contend, that the suggested contract or agreement of sale was in writing or recorded,[1] or that United States had any notice of such a contract, agreement or

---

1. Under the provisions of section 55–2 of the Code of Virginia, any right to a conveyance of land or for an interest therein must be in writing and any conveyance shall be by deed or will.

arrangement at the time it assessed the taxes in question, or that it had any actual notice of the filing of the *lis pendens*. If in fact Wise held a contract of purchase, in writing, to give notice of such a contract, it should have been recorded as provided by section 55–106 and section 55–96 of the Code of Virginia. Pursuant to section 55–96, contract for the sale of real estate or an interest therein is void as to creditors "until and except from the time it is duly admitted to record in the ... corporation wherein the property embraced in such contract ... may be." Hence, even if the United States had knowledge of the *lis pendens* filed by Wise, and of his claim, it does not change the priority of its judgment recorded before the judgment of Wise. The United States was and is a creditor. Pursuant to section 55–96, prior notice does not affect the priority of a creditor who first records his judgment. This is the construction of this statute by the Supreme Court of Virginia. *See Neff's Administrator v. Newman*, 150 Va. 203, 142 S.E. 389, 391 (1928). *Neff, supra* held that an unrecorded deed of trust was no protection against a judgment creditor, with or without notice, and where the judgment creditor recorded his judgment before the deed was recorded, the judgment took priority over the deed of trust, even though the judgment creditor had prior notice of the deed of trust. Under this statute, a deed or instrument required to be recorded, is void as to judgment creditors of the grantor, even though they have notice thereof. *See Blair v. Rober's Administrator*, 135 Va. 1, 116 S.E. 767, *cert. denied*, 262 U.S. 734, 43 S.Ct. 704, 67 L.Ed. 1206 (1923). The same construction has been given this statute by the federal courts. In *Fooshee v. Snavely*, 58 F.2d 772, 774 (W.D. Va.1931), *aff'd* 58 F.2d 774 (4th Cir.1932), the trial court held that even though the judgment creditor or his attorney knew of the deed from the judgment debtor to a third person, where the judgment was docketed before the deed was recorded, the judgment took priority over the deed. There the court pointed out:

[P]urchasers with notice cannot be innocent purchasers; but the rights of creditors are not affected by notice. A deed [or other instrument] is void as to creditors until admitted to record whether such creditors do or do not know of the deed. (citations omitted)

*See also McCoy v. Rhodes*, 52 U.S. 131, 11 How. 131, 13 L.Ed. 634 (1950). This has been the constant construction of this statute; namely, that a deed is void as against creditors "until and except from the time it is duly admitted to record." *Slater v. Moore*, 86 Va. 26, 9 S.E. 419, 421 (1889). *See also Flannary v. Kane*, 102 Va. 547, 46 S.E. 312, 316 (1904).

Pursuant to section 8.01–456 of the Code of Virginia, a judgment becomes a lien on all the real estate of or to which the defendant in the judgment becomes possessed or entitled "from the time such judgment is recorded on the judgment lien docket of the Clerk's Office of the City ... where such land is situated ..." Hence, the judgment obtained by Wise in September did not become a lien on the real estate in question until docketed. Section 8.01–459 provides that the priority of the liens of judgments attach to debtor's real estate and are payable thereout "in the order of the priority of the lien of such judgments, respectively." The whole of the real estate is first to be applied to the elder judgment and the whole of the residue to the junior judgment.

The *lis pendens* filed by Wise was not a lien or a judgment. It was merely notice that he had an action pending, seeking to obtain a judgment. From the pleadings Wise only obtained a personal judgment against the Frangos. A *lis pendens* has no application in a case where the action is debt and is to recover a personal judgment against the defendant. *Prestons Drive-Inn Restaurant, Inc. v. Convery*, 207 Va. 1013, 154 S.E.2d 160 (1967). This is all that is shown by the record.

Though there is no fact in the record to so suggest, even if in fact Wise had a written contract or deed from the Frangos for an interest in the property sold under

the deed of trust, it was void as to creditors until it was recorded as required by statute.

## V.

Plaintiff also requests that an additional $1,000 be paid to plaintiff for Trustee's commission and that an additional $3,190.84 be awarded in attorney's fees.

An allowance for costs or attorney's fees may not be allowed a stakeholder of an interpleader fund to the extent that they are payable out of a part of the fund impressed with a federal tax lien. *United States v. R.F. Ball Construction Company, Inc.*, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510 (1958); *United States v. Liverpool & London & Globe Insurance Co.*, 348 U.S. 215, 75 S.Ct. 249, 99 L.Ed. 268 (1955); *Campagna-Turano Bakery, Inc. v. United States*, 632 F.2d 39 (7th Cir.1980); *Bank America National Trust & Savings Asso. v. Mamakos*, 509 F.2d 1217 (9th Cir. 1975); *Spinks v. Jones*, 499 F.2d 339 (5th Cir.1974); *United States v. State National Bank*, 421 F.2d 519 (2d Cir.1970); *United States v. Wilson*, 333 F.2d 147 (3rd Cir. 1964); *First National Bank of Norfolk v. Norfolk and Western Railway Co.*, 327 F.Supp. 196 (E.D.Va.1971). The fund here involved not being sufficient to satisfy the tax lien, allowance for costs and attorney's fees to the stakeholder are DENIED.

## VI.

Finding that the United States' tax lien is superior to Wise's judgment, defendants' motion for summary judgment is GRANTED, and the Clerk is ordered to pay the surplus funds from the Trustee sale interpleaded in this action, along with any accrued interest thereon, over to the United States in partial satisfaction of its tax lien. Upon payment to the United States, the plaintiff shall be discharged from all obligations and liabilities to the parties for funds resulting from the Trustee sale. The Court DENIES the plaintiff's request for additional costs and attorney's fees. As to the cross-claim, the Court refuses to assess costs, penalties, interest and attorney's fees against defendant Wise.