COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


FRANCISCA LOUIS, S/K/A
 FRANCISCA J. LOUIS
                                              OPINION BY
v.   Record No. 1078-02-1            JUDGE RICHARD S. BRAY
                                             APRIL 1, 2003
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                   Verbena M. Askew, Judge

        Alfred O. Masters, Jr., for appellant.

        Linwood T. Wells, Jr., Assistant Attorney
        General (Jerry W. Kilgore, Attorney General,
        on brief), for appellee.


    In a bench trial, the trial court convicted Francisca J.

Louis (defendant) for feloniously "defraud[ing an] Innkeeper" in

violation of Code § 18.2-188.[1]  On appeal, defendant contends the

evidence was insufficient to support the conviction.  We agree

and reverse the trial court.

                            FACTS

    "On appeal, 'we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

_____
    [1] The subject indictment alleged defendant "unlawfully . . .
procure[d] . . . accommodation having a value of $200 or more
from Mulberry Inn without paying therefore [sic] and with the
intent to defraud," language paralleling Code § 18.2-188(4).

The facts are substantially uncontroverted. Appellant and her five children, military dependents, returned from Germany to the United States in early September, 1999. Because a local military "post" was unable to accommodate the family, defendant secured lodging at the "TDY Inn" while she sought more suitable housing. By September 14, defendant had "signed a lease" for a home located in Newport News, but, before she relocated, flood waters from Hurricane Floyd inundated both the residence and the TDY Inn, necessitating evacuation from the motel.

By prior arrangement with the Red Cross, the nearby Mulberry Inn agreed to accept persons displaced by the storm waters, and defendant was directed there by the manager of the TDY Inn. Defendant had not confirmed entitlement to Red Cross relief, but, nevertheless, proceeded with her children to the Mulberry Inn on September 16, 1999. Requesting a room, defendant represented to the clerk that she had been displaced by the flood and was "with the Red Cross," although unable to provide a related "voucher" or "notice." Defendant completed the registration card required by the Mulberry Inn, indicated both "cash" and "credit card" as the "method of payment," listed the address of the recently rented home as her residence and was assigned a room.

During the ensuing twelve days of her stay, defendant, on "several" occasions, assured Mulberry Inn employees that she was "in the process" of obtaining forms necessary to secure Red

Cross payment of the lodging costs directly to the Inn. When her account of $1,022.28 remained unpaid at the time of "checkout" on September 28, 1999, defendant acknowledged ultimate responsibility for the debt, but again assured the management that either the Red Cross or the Federal Emergency Management Agency (FEMA) would satisfy the charges.

Uncertain defendant was qualified for Red Cross or FEMA benefits, a Mulberry Inn employee, Katherine Swetnam, then prepared and presented defendant with a promissory note payable to the Mulberry Inn in the principal sum of $1,022.28, due in twelve monthly installments. Defendant agreed to the proposal and executed the note, once again providing the home address reported on her registration card. In exchange, the Mulberry Inn designated the room and related charges as an "account transfer" on its records, noting a zero balance. Defendant then proceeded immediately to the rental home, her residence during the following eighteen months.

The record is clear that defendant thereafter defaulted on the promissory note and the Mulberry Inn received no payments from either FEMA or the Red Cross. In explanation, defendant testified that, because benefits would be paid "directly to" the Mulberry Inn, she assumed the obligation had been satisfied until initiation of the instant prosecution proved otherwise.

ANALYSIS

In pertinent part, Code § 18.2-188 prohibits "any person, without paying therefor, and with the intent to cheat or defraud the owner or keeper to:  . . . 4.  Without having an express agreement for credit, procure food, entertainment or accommodation from any hotel, motel, campground, boardinghouse, restaurant, eating house or amusement park."  The Commonwealth maintains that defendant's failure to either satisfy the promissory note or secure payment to the Mulberry Inn by FEMA or the Red Cross proves the requisite intent to defraud in violation of Code § 18.2-188.  However, the Commonwealth's argument ignores both the clear language of the statute and the proscribed conduct embraced by the indictment.

Code § 18.2-188(4), the subsection tracked in the indictment, expressly criminalizes procurement of "food, entertainment, or accommodation," without payment, only in the absence of an "express agreement for credit."  "When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated."  Williams v. Commonwealth, __ Va. __, __, 576 S.E.2d 468, __ (2003) (citations omitted).  Thus, a "hotel, motel, campground, boardinghouse, restaurant, eating house or amusement park" providing the enumerated goods and services pursuant to an agreed credit arrangement, does not enjoy the protection afforded by Code § 18.2-188(4) upon a breach of such agreement.

Here, the record clearly reflects that the Mulberry Inn accepted defendant's promissory note in satisfaction of the charges arising from those accommodations procured by her, inarguably an express agreement for credit.  Indeed, the Mulberry Inn specifically transferred the underlying account to the note, resulting in a zero balance remaining due.  Under such circumstances, defendant's subsequent default did not constitute criminal conduct within the intendment of Code § 18.2-188(4).

Accordingly, we reverse the conviction.

<u>Reversed and dismissed</u>.