COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference

PAULA JO SMITH

OPINION BY
v.     Record No. 1146-19-4     CHIEF JUDGE MARLA GRAFF DECKER
DECEMBER 1, 2020
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

James Joseph Ilijevich for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Paula Jo Smith appeals her conviction for defrauding an innkeeper in violation of Code

§ 18.2-188. On appeal, she contends that the evidence was insufficient to support her conviction

because it did not prove she had the requisite intent to defraud. The appellant also maintains that the

trial court erred by making numerous evidentiary rulings that improperly limited her ability to show

that she had difficulty paying for her stay at the hotel. We hold that the evidence established that

the appellant formed the requisite intent to defraud the hotel owner. Regarding the challenged

evidentiary rulings, the appellant's failure to proffer the related line of questioning and expected

answers bars this Court's review of one of the alleged errors. Further, in another instance, in which

the appellant made a proper proffer, the trial court did not abuse its discretion by excluding evidence

on relevance grounds. Finally, we hold that if the trial court erred by limiting the appellant's

testimony in two additional areas, any such errors were harmless. Accordingly, we affirm the

conviction.

I. BACKGROUND[1]

The appellant lived with her children at a hotel for about a year. After falling behind in her room payments, she moved out of the hotel without paying her outstanding balance. As a result, the Commonwealth charged her with one count of defrauding an innkeeper.

At trial, the evidence established that when the appellant began living in the hotel in 2016, she paid for her room in advance each week in order to receive a discounted rate of $40 per day. However, in June 2017, she began falling behind on her payments. The hotel manager, Shanita Smith, and the hotel's owner, Nilaykumar Patel, spoke with the appellant about her outstanding balance. She assured them that she would pay in full "before she left." Patel allowed the appellant to remain at the hotel but increased her daily rate to $59.99.

Patel testified that after he spoke with the appellant in the middle of June about her outstanding balance, she started complaining about bugs in her room. Patel offered her a different room, but she declined to move. No other guests had complained about bugs, but Patel nevertheless had a pest control company treat the appellant's room.

The appellant made a $140 cash payment toward her room balance in late June and a $300 cash payment in early July. However, she made no further payments after July 4, and when she left the hotel on July 27, 2017, she had an outstanding balance of more than $2,000. She moved to a different hotel, using $1,000 that she had saved from her disability checks.

On the morning of July 27, 2017, Hotel Manager Smith learned that the appellant had left without "check[ing] out . . . at the front desk." After unsuccessful attempts to contact the appellant, Smith and Patel reported her actions to Sergeant W. Kreider of the Stafford County

---

[1] When considering a challenge to the sufficiency of the evidence on appeal, this Court "view[s] the evidence, and all inferences reasonably drawn from it, in the light most favorable to the Commonwealth," the party who prevailed in the trial court. Reid v. Commonwealth, 65 Va. App. 745, 753 (2016) (quoting Muhammad v. Commonwealth, 269 Va. 451, 536 (2005)).

Sheriff's Office. Kreider spoke with the appellant on the phone. She told him that she was "going to get a job and try to work out arrangements to make payments." The appellant subsequently phoned Patel and told him that she wanted to set up a payment plan. However, she did not return to the hotel or make any payments despite having income from a new job that she started on August 13, 2017.

The appellant testified in her own defense. She said that she did not fall behind in her room payments until after her rate increased in June 2017. She claimed that she first complained about bugs in her room in late 2016. According to the appellant, Patel did not have her room treated for bugs until she showed "the infestation" to a health inspector who came to her room over six months later, in late July 2017.

The appellant alleged that when she returned to the hotel after her room had been treated, Patel "verbally assaulted" her. She said that she was embarrassed by the incident and decided to leave the hotel later that night. She also explained that she abruptly left the hotel with her children for her "safety," "health," and "well-being." Further, she testified that she was upset that Patel had "changed [her] payment at the last minute." The appellant said that after paying "$25,000 to $30,000" to live there, she believed that she "had given [Patel] enough money." According to the appellant, because Patel "chang[ed her] bills at the last minute," she did not think it was "right for [her] to have to pay [him] any[ ]more money than [she] already had."

The appellant moved to strike the evidence at the end of the Commonwealth's case-in-chief and at the close of all the evidence. The trial court denied both motions. The jury convicted the appellant of defrauding an innkeeper. The court imposed the jury's sentence of one week in jail and a fine of $2,500. It also ordered the appellant to pay restitution of $2,284.

## II. ANALYSIS

The appellant challenges the sufficiency of the evidence to support her conviction for defrauding an innkeeper. She also maintains that the trial court made several erroneous rulings on the admissibility of certain evidence.

### A. Sufficiency of the Evidence

The appellant suggests that the evidence is insufficient to prove that she acted with the requisite intent because it does not show that she intended to defraud the owner at the time she "put up" at the hotel. Intent is the only element of the offense that she contests on appeal.

When reviewing the sufficiency of the evidence, "this Court 'must affirm the conviction unless it is plainly wrong or without evidence to support it.'" Brown v. Commonwealth, 68 Va. App. 746, 786-87 (2018) (quoting Gerald v. Commonwealth, 68 Va. App. 167, 172 (2017)). "This deferential standard 'requires us to "discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn"' from that evidence." Green v. Commonwealth, 72 Va. App. 193, 200 (2020) (alteration in original) (quoting Vasquez v. Commonwealth, 291 Va. 232, 236 (2016)). "This standard 'applies not only to the historical facts themselves, but [also to] the inferences from those facts.'" Id. (alteration in original) (quoting Clanton v. Commonwealth, 53 Va. App. 561, 566 (2009) (*en banc*)). Further, "[t]o the extent our analysis of the sufficiency of the evidence requires us to examine the statutory language, we review issues of statutory construction *de novo* on appeal." Miller v. Commonwealth, 64 Va. App. 527, 537 (2015).

The relevant statute, Code § 18.2-188(1), states in pertinent part that "[i]t shall be unlawful for any person, without paying therefor, and with the intent to cheat or defraud the owner or keeper to . . . [p]ut up at a hotel." Under this statute, the Commonwealth must prove

that the defendant harbored an "intent to cheat or defraud" at the time she "[p]ut up at a hotel." Code § 18.2-188(1). A person who "[p]ut[s] up at a hotel" without intending to pay for her stay has violated the statute. Id.

The appellant relies on the language in the statute, which makes clear that the intent to defraud must exist at the time that the defendant "put up" at a hotel. She suggests that "put up" references the specific time when she checked in or began lodging at the hotel. In support of this argument, she cites Caldwell v. Commonwealth, ___ Va. ___ (Apr. 9, 2020).

This sufficiency challenge requires the Court first to determine what the term "put up" means in the context of Code § 18.2-188(1) and then, applying appropriate deference to the determinations of the trier of fact, to look to the facts in this case. The phrase "put up" is not defined in the statute, so we rely on settled principles of statutory construction to determine its meaning.

We begin our analysis with "the plain meaning of the words contained in the statute," which reflect the General Assembly's intent. Salazar v. Commonwealth, 66 Va. App. 569, 577 (2016); see Jones v. Commonwealth, 296 Va. 412, 415 (2018). "[C]ourts 'are required to ascertain and give effect to the intention of the legislature, which is usually self-evident from the statutory language.'" Armstead v. Commonwealth, 55 Va. App. 354, 360 (2009) (quoting Johnson v. Commonwealth, 53 Va. App. 608, 612 (2009)). When we consider the meaning of particular language in context, the Court "adhere[s] to rules of statutory construction that discourage any interpretation of a statute that would render any part of it useless, redundant or absurd." Spratley v. Commonwealth, 298 Va. 187, 195-96 (2019) (quoting Owens v. DRS Auto. FantomWorks, Inc., 288 Va. 489, 497 (2014)).

The meaning of the phrase "put up" has not been analyzed with regard to its use in the statute that proscribes defrauding an innkeeper.[2] Consequently, we turn to the most applicable dictionary definition of the term and its usage in other Virginia statutes. See Eley v. Commonwealth, 70 Va. App. 158, 165 (2019) (noting that a court interpreting undefined statutory terminology may consult dictionary definitions); Moyer v. Commonwealth, 33 Va. App. 8, 35 (2000) (*en banc*) (noting that "[t]he Code of Virginia constitutes a single body of law[] and other sections can be looked to where the same phraseology is employed" (first alteration in original) (quoting Hart v. Commonwealth, 18 Va. App. 77, 79 (1994))).

"Put up," used as an intransitive verb, means to "lodge." Put up, Webster's Third New International Dictionary (2002). The given usage of the intransitive verb form of the term "put up" in Webster's Dictionary is as follows:

> <two seasons ago I *put up* at a farmhouse —T.H. White b. 1906>
> **syn** *see* RESIDE

Id. We assume that when the General Assembly crafted the statute in 1894 and used the term "put up," it kept in mind the "common, ordinary and accepted meaning" of the term in light of the specific prohibition that the statute addresses. See 1893-1894 Va. Acts ch. 841; Pittman v. Commonwealth, 69 Va. App. 632, 637 (2019) (quoting Bennett v. Commonwealth, 60 Va. App. 656, 666 (2012)). Similarly, when a court analyzes the language of a statute and applies it to the facts of a case, it uses definitions that unambiguously apply in the context of the particular statute. See Branch v. Commonwealth, 14 Va. App. 836, 839 (1992). Accordingly, given the

---

[2] The term "put up," which dates back to the origin of the statute in 1894, is a phrase with many uses and definitions. See 1893-1894 Va. Acts ch. 841; Put up, Webster's Third New International Dictionary (2002) (listing fourteen definitions for the term). The phrase has been used in different ways in appellate opinions over the years. See, e.g., Collins v. First Union Nat'l Bank, 272 Va. 744, 746-47 (2006) (using the term "put up" to explain that victims in a fraud scheme were not required to provide collateral to secure loans ostensibly being used to qualify them for business investment visas); Slater v. Moore, 86 Va. 26, 28 (1889) (using the phrase "put up" to indicate that goods had been placed or stored in a store).

conduct that Code § 18.2-188(1) proscribes, we hold that "put up" means to "lodge" or reside in a hotel. The General Assembly used the term in just such a context in a related statute enacted in 1914, which then provided for licensing and taxing hotels. See 1914 Va. Acts ch. 241 (defining a "hotel" in part as a place where "guests are fed or lodged" and using the term "put up" to discuss how long a guest remained lodged at the hotel).[3] Manifestly, both the plain meaning of "put up" and its usage elsewhere in the Virginia Code near the time of the statute's enactment indicate that the term applies to any period for which one arranges to lodge at a hotel.

The recent decision of the Supreme Court of Virginia in Caldwell does not support a different result. Caldwell, which was rendered under a different subsection of the statute, involved a one-time transaction for which a diner was convicted of defrauding a restaurant based on a refusal to pay for her breakfast. ___ Va. at ____. On those facts, the Court held that the Commonwealth was required to establish that Caldwell formed an intent to defraud before she ate the single breakfast at issue, and it ruled that the evidence was insufficient to meet that burden. Id. at ___, ___.

In this case, by contrast, the appellant engaged in recurring transactions with the hotel. She paid by the week and received a reduced daily room rate as a result. The hotel charged the appellant for her room on a *daily* basis, a fact of which she was aware. Consequently, a conviction under the statute did not require proof that the appellant had the intent to defraud when she first checked in at the hotel. Instead, the Commonwealth was required to prove only that she had the necessary criminal intent prior to any one of her daily transactions with the hotel to support the single count of defrauding an innkeeper.

---

[3] The appellant contends, without citing any controlling authority, that "putting up" specifically refers to the precise moment in time when she "checked in" or "moved in" to her room at the hotel. Her suggested narrow meaning of "put up" stretches any established definition of the term and is inconsistent with a "plain meaning" analysis.

Having resolved the threshold issue of the meaning of the term "put up" as used in Code § 18.2-188(1), we now turn to whether the evidence proved that the appellant had the requisite criminal intent at the time of any one of her relevant transactions with the hotel. Intent is typically proved by circumstantial evidence. Secret v. Commonwealth, 296 Va. 204, 229 (2018). As in "all . . . fraud cases, fraudulent intent can be inferred from 'the conduct and representations of the defendant.'" Dennos v. Commonwealth, 63 Va. App. 139, 145 (2014) (quoting Rader v. Commonwealth, 15 Va. App. 325, 329 (1992)); see Austin v. Commonwealth, 60 Va. App. 60, 66 (2012). Notably, "[w]hether the required intent exists is generally a question of fact for the trier of fact." Brown, 68 Va. App. at 787 (quoting Nobles v. Commonwealth, 218 Va. 548, 551 (1977)).

Here, the jury was presented with sufficient evidence to support a finding that the appellant formed the specific intent to defraud Patel, the hotel owner, in conjunction with her later transactions for lodging during her long-term stay. The evidence established that because the appellant failed to keep up with her payments in May and June 2017, she lost the preferred rate of $40 a day, and her daily room rate increased. The appellant made two payments for the room at the new rate. However, she stopped paying for her room after July 4, 2017, and nevertheless remained there for an additional twenty-two days without paying anything for the room over that period of time or thereafter.

The timing of the appellant's failure to pay and her related behavior are important factors. She began falling behind on her payments around June 16, 2017. When she was confronted about her delinquent bills, she promised the hotel management that she would pay her balance "before she left." The record establishes that she did not do so. Ultimately, the appellant left the hotel at night without paying what she owed or even checking out at the front desk. She never returned to the hotel to make another payment, despite the fact that she had saved up $1,000.

Additionally, although the appellant secured employment about two weeks after abandoning her hotel room, she neither paid what she owed nor contacted hotel management to set up a payment plan for her outstanding balance as she had promised to do.

All of this evidence alone supports the jury's conclusion that after July 4 the appellant made a conscious decision to remain "put up" in her room for a period of time without paying for it. However, in addition, the appellant's own testimony makes clear that she intended to defraud Patel. When the appellant testified, she explained her furtive departure and subsequent refusal to make any payments by stating that because Patel "chang[ed her] bills at the last minute," she did not think it was "right for [her] to have to pay [him] any[ ]more money than [she] already had." Based on her own testimony, the jury could reasonably have concluded that because the appellant was upset about the increase in her room rate in mid-June, she decided to "put up" at the hotel for the final three weeks without paying Patel any additional money for the room. See Blankenship v. Commonwealth, 71 Va. App. 608, 619 (2020) ("The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." (quoting Ragland v. Commonwealth, 67 Va. App. 519, 529-30 (2017))). Further, the jury could reasonably infer fraudulent intent based on the appellant's avoidance of attempts by hotel staff to contact her after she left.[4] See Dennos, 63 Va. App. at 145-46 (holding that a defendant's "efforts to avoid communicating with the [victims]" and "subsequent failure to perform the work" in a construction fraud case were evidence of "fraudulent intent"); see also Simon v. Commonwealth,

---

[4] The jury was free to disbelieve the appellant's claims that a roach infestation or any of the other alleged problems at the hotel influenced her decision to leave or somehow negated her intent to "put up" without paying. See Bazemore v. Commonwealth, 42 Va. App. 203, 213 (2004) (en banc) (explaining that the jury is "free to believe or disbelieve, in part or in whole, the testimony of any witness").

58 Va. App. 194, 206 (2011) (noting that "conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent").

Accordingly, the evidence presented supports the jury's finding that the appellant formed the requisite intent to defraud the owner while she resided at the hotel and stayed there for several weeks without paying, did not settle her bill when she left, and never set up a payment plan despite her representations that she would do so. For these reasons, we hold that the evidence, viewed under the proper standard, proved that the appellant intended to defraud Patel when she "put up" at the hotel during the three-week period following her last payment on July 4, 2017.[5]

### B. Evidentiary Rulings

The appellant also argues that the trial court erred by "exclud[ing] or significantly limit[ing]" evidence regarding several subjects brought up during trial. She maintains that these evidentiary errors occurred because the judge misunderstood the elements of Code § 18.2-188, specifically, the requirement for proof of intent to defraud. We consider first whether the judge misunderstood the law and then turn to the appellant's individual evidentiary claims.

### 1. The Trial Court's Understanding of the Law

To support her contention that the trial judge misunderstood the law, the appellant points to a short discussion between the judge and the attorneys during the appellant's

---

[5] The appellant also argues that she entered into a credit arrangement with the hotel and therefore could not be found guilty of procuring the accommodation by fraud. See Code § 18.2-188(4). However, she did not preserve this specific argument below. Although she directed the trial court's attention to Louis v. Commonwealth, 40 Va. App. 228 (2003), which involved the impact of a line of credit on a charge of defrauding an innkeeper, she referenced the case for an unrelated principle. Therefore, we hold that the argument is barred by Rule 5A:18. See Bethea v. Commonwealth, 297 Va. 730, 743-44 (2019); Hicks v. Commonwealth, 71 Va. App. 255, 266 (2019). The appellant has not requested that the Court consider the argument pursuant to an exception to Rule 5A:18, and we will not do so *sua sponte*. See Edwards v. Commonwealth, 41 Va. App. 752, 761 (2003) (*en banc*), aff'd by unpub'd order, No. 040019 (Va. Oct. 15, 2004)), cited with approval in Jones v. Commonwealth, 293 Va. 29, 39 n.5 (2017).

cross-examination of the hotel manager. The prosecutor questioned the relevance of testimony that the appellant characterized as the hotel's response to "issues" that the appellant "raised with [the hotel]." She suggested that hotel staff treated her differently than other guests with outstanding balances and sought to "punish[]" her. The judge observed that such evidence was "neither here nor there" because it was "like speeders on the highway." After some additional discussion regarding relevance and whether the questioning was better directed toward the hotel's owner rather than its manager, counsel for the appellant began, "I just, again for the record—" The prosecutor interjected, stating, "It's basically strict liability." Following these comments, the judge said, "Yes." Counsel for the appellant replied, "Well, that's the Commonwealth's position. But ultimately . . . it goes towards her intent to defraud if she thinks she is being punished." The judge responded that the appellant could "argue that in . . . closing" but adhered to her ruling sustaining the objection on relevance grounds.

The appellant relies on the single "Yes" response by the judge during the back-and-forth exchange with counsel to argue that the court misunderstood the law. She frames the judge's response as an acceptance of the prosecutor's statement that a charge of defrauding an innkeeper hinges on the simple failure of a hotel guest to pay for particular services and is "basically strict liability." An appellate court, however, "will not fix upon isolated statements of the trial judge taken out of the full context in which they were made[] and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978 (1977); see also Duggins v. Commonwealth, 59 Va. App. 785, 789 n.2 (2012) ("[W]e presume [trial] judges know the law and correctly apply it." (second alteration in original) (quoting White v. White, 56 Va. App. 214, 217 (2010))).

The trial court's "Yes" response came during a multifaceted discussion and does not compel the conclusion that the judge accepted the prosecutor's assertion that the offense was

"basically" one of "strict liability." Additionally, the exchange does not paint a full picture of everything else that occurred at trial. Despite the brief discussion, the record as a whole clearly reflects that the judge understood the elements of the offense. Later, following the exchange at issue, the appellant made a motion to strike and argued that the Commonwealth had not shown that she had an intent to defraud the hotel owner. The prosecutor disputed this point and noted that the question of intent was a factual one for the jury. The judge denied the motion and mentioned that "[i]ntent . . . can be inferred from the actions of the individuals." The judge added that whether the requisite intent existed was "a factual issue for the jury to determine." When the appellant renewed her motion to strike, she again argued that the Commonwealth had failed to prove that she had an intent to defraud the hotel owner. The prosecutor responded that the question was whether she failed to pay "because she intended to cheat [the owner]," and he noted that the appellant's own testimony shed light on this subject. He concluded by reiterating that the issue of intent was a factual question for the jury. The trial judge denied the renewed motion to strike, correctly ruling that intent was a question for the trier of fact. Consistent with the trial court's rulings, the jury was properly instructed on the elements of the offense and, specifically, that the Commonwealth was required to prove that the appellant had failed to pay the owner "with the intent to cheat or defraud."

Consequently, the record as a whole makes clear that the trial judge understood that proof of intent was required under the statute.

### 2. Challenges to Specific Evidentiary Rulings

The appellant contends that the trial court erred by limiting her presentation of evidence with regard to several subjects:  (a) alleged bias toward her by hotel staff; (b) the hotel owner's financial practices regarding other guests; (c) the appellant's financial situation; and (d) her claim that the Commonwealth's Attorney's office directed her to remain at the hotel. The

appellant argues that "these lines of questioning w[ere] relevant to whether her non[]payment . . . and her abrupt departure from the [hotel] were carried out with fraudulent intent" and therefore should have been allowed.

### a. Evidence of Bias of Hotel Management

At trial the appellant's counsel attempted to question the hotel manager regarding an assault complaint that the appellant had made against an employee of the hotel. The Commonwealth objected based on relevance. The appellant's counsel explained that the questions related to whether the hotel management had "some vendetta" against the appellant and alleged that Patel harbored bad feelings toward her. The court noted that the questions were probably "more appropriate to ask Mr. Patel" and ruled that the inquiry was not relevant when questioning the hotel manager.

It is well established that a party who wishes to challenge the trial court's exclusion of evidence on appeal must provide a proffer of that evidence that is adequate to permit this Court to determine whether the lower court erred. See, e.g., Tynes v. Commonwealth, 49 Va. App. 17, 23 (2006) (noting that absent a proper proffer, the appellate court could not determine whether the trial court erred by excluding testimony or whether that exclusion was prejudicial). Here, when the trial court ruled against the appellant, she failed to proffer the testimony she expected Hotel Manager Smith to deliver. The failure to proffer is fatal to this particular claim. Without a proffer of the hotel manager's expected testimony, this Court is unable to determine whether any such information was relevant and admissible and whether its exclusion was prejudicial. Consequently, we do not consider this claim of error.

### b. Patel's Efforts to Collect from Other Guests

The appellant challenges the trial court's ruling excluding Patel's testimony about what actions he typically took regarding other clientele with unpaid hotel bills.

"Evidence is admissible if it is both relevant and material." Castillo v. Commonwealth, 70 Va. App. 394, 462 (2019) (quoting Patterson v. Commonwealth, 62 Va. App. 488, 493 (2013)). The trial court ruled that Patel's testimony about how he typically handled the unpaid hotel bills of other guests was not relevant to the case. We hold that this ruling is correct. See Coe v. Commonwealth, 231 Va. 83, 87 (1986) (noting that "evidence of collateral facts and facts incapable of supporting an inference on the issue presented are irrelevant and cannot be accepted in evidence" because "[s]uch irrelevant evidence tends to draw the jurors' attention toward immaterial matters"). Patel's past practices with other individuals have no bearing on *the appellant's* intent to defraud or the time at which she formed that intent. Nor do Patel's practices with others address any of the other elements of the offense. See id. For these reasons, the trial court acted properly within its discretion by not allowing testimony on this point.[6]

### c. Evidence of Financial Impact of Medical Costs

The appellant argues that the trial court improperly excluded a line of questions involving whether medical care for the appellant and her son from May to July 2017 affected her ability to pay her hotel bills. She attempted to testify that she had been hospitalized with cancer and her son had sustained an injury that required surgery, but the testimony was excluded. The trial court ruled that any such testimony was not relevant.

Assuming without deciding that evidence concerning the cost and timing of the medical treatment was relevant to the jury's consideration of the element of intent, we hold that any error in excluding it was harmless. See Commonwealth v. White, 293 Va. 411, 419 (2017) (observing the duty of appellate courts to decide cases on the best and narrowest ground and noting that one such ground may be concluding that any error was harmless). In a case involving alleged

---

[6] We note that despite the ruling, Patel ultimately gave testimony confirming that he pursued legal action, whether criminal or civil, against guests who failed to pay their bills "[e]very single time." Thus, the proposed evidence was before the jury.

non-constitutional error, any error is harmless when it "plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Anderson v. Commonwealth, 282 Va. 457, 466 (2011) (quoting Rose v. Commonwealth, 270 Va. 3, 11-12 (2005) (quoting Code § 8.01-678)). "If, when all is said and done," the reviewing court is "sure that the [non-constitutional] error did not influence the jury, or had but slight effect, the verdict and the judgment should stand." Clay v. Commonwealth, 262 Va. 253, 260 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)). In the context of the required test, such error is harmless where "other evidence of guilt is 'so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.'" Salahuddin v. Commonwealth, 67 Va. App. 190, 212 (2017) (quoting McLean v. Commonwealth, 32 Va. App. 200, 211 (2000)); see also Davies v. Commonwealth, 15 Va. App. 350, 353 (1992) (recognizing that a court must be able to reach this conclusion "without usurping the jury's fact finding function" (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005 (1991) (*en banc*))).

In this case, any error in the trial court's evidentiary ruling was harmless given the forthright nature of some of the appellant's additional, more specific testimony relating to her intent. See Code § 8.01-678; Clay, 262 Va. at 260.[7] Although the appellant admitted saving $1,000 from her disability benefits before leaving the hotel, she departed furtively from the hotel at night without paying any of her outstanding balance. When the appellant was asked why she left without paying, she explained that Patel "had changed [her] payment at the last minute for [her] dog and [her] room," and she candidly shared her belief that she had already "given [Patel]

---

[7] This conclusion is also supported by the seminal principle that a litigant can rise no higher than the "facts within [her] own knowledge and . . . to which [she] has testified." See Travis v. Bulifant, 226 Va. 1, 4-5 (1983) (quoting Massie v. Firmstone, 134 Va. 450, 462 (1922)), cited with approval in Williams v. Commonwealth, 234 Va. 168, 176 (1987).

- 15 -

enough money." Although she secured a job within a few weeks after leaving the hotel, she never made any effort to pay her outstanding hotel bill. The appellant's candid admission that she believed she had paid Patel "enough money," coupled with her furtive nighttime departure, avoidance of hotel management's attempts to contact her after she left, and failure to make any additional payments on her outstanding balance despite her savings and new job, clearly established that she never intended to pay Patel for her last three weeks of occupancy.

The evidence of the appellant's guilt in this case, viewed in its totality, was overwhelming. Any possible error made by the trial court in limiting her testimony regarding her family medical bills was insignificant compared to her forthright testimony and the evidence of her actions, which belied any intent to pay her outstanding balance with the hotel. The record plainly demonstrates that the appellant had "a fair trial on the merits and substantial justice has been reached." See Code § 8.01-678. Accordingly, we hold that if the trial court erred in excluding any of the alleged evidence, such an error was harmless.

d. Evidence Related to an Order Requiring the Appellant to Stay at the Hotel

The appellant claims that she should have been permitted to offer evidence about an alleged order from the Stafford County Commonwealth's Attorney's office specifically directing her to remain at the hotel because her son was a witness in a trial. She suggests that this evidence was relevant to negate the Commonwealth's claim that her remaining at the hotel without paying demonstrated her fraudulent intent.

When the appellant first attempted to introduce evidence regarding the purported order, the trial court sustained the Commonwealth's objection that it was not relevant. However, the appellant ultimately mentioned the alleged order briefly without objection while testifying on direct examination and then again on cross-examination. The trial court in fact noted that the appellant mentioned more than once in her testimony "that she was ordered to stay [at the

hotel]." As a result, despite the court's prior ruling that the evidence was not admissible, it permitted the Commonwealth to briefly explore the issue further on cross-examination. Consequently, we conclude that the court's original ruling regarding the admissibility of testimony concerning the *existence* of the purported order, if erroneous, was harmless because the appellant later testified about the order on both direct examination and cross-examination.[8] See King v. Cooley, 274 Va. 374, 380 (2007) (holding that because proffered testimony was "merely cumulative" of other testimony, its exclusion "could not have affected the jury's determination and, thus, was harmless error"). Accordingly, the jury was able to consider the appellant's claim that she had been ordered to remain at the hotel by the Commonwealth's Attorney for whatever weight it chose to give that testimony.[9]

Finally, to the extent that the appellant complains that she was improperly prohibited from testifying to her *belief* about what she was allowed to do while subject to the alleged order, she failed to proffer her proposed testimony to the trial court. Therefore, this Court cannot consider the relevance of that specific line of questioning. See Murray v. Commonwealth, 71 Va. App. 449, 458 (2020).

### III. CONCLUSION

The evidence was sufficient to prove that the appellant did not intend to pay for the last three weeks of her stay at the hotel, which established that she "put up" there with the requisite

---

[8] We further note that the appellant failed to offer a copy of the purported order as evidence at trial.

[9] To the extent that the appellant challenges the trial court's ruling that questions related to this topic were irrelevant when posed to Hotel Manager Smith, that ruling was not an abuse of discretion. Nothing in the record suggests that Smith knew about the alleged order. See Tynes, 49 Va. App. at 23 (explaining that without a proffer, the appellate court could not determine the admissibility of proposed testimony). Even if she did, any questions posed to her would have elicited only hearsay and conjecture. See generally Robinson v. Commonwealth, 258 Va. 3, 6 (1999) (discussing the burden of proof and admissibility of hearsay testimony).

intent to defraud.  Additionally, with regard to the evidentiary issues raised by the appellant, none provide a basis for reversal.  First, the record does not show that the trial judge misunderstood the law.  Second, none of the appellant's specific evidentiary objections establish reversible error because either the appellant failed to proffer adequate evidence at trial to permit appellate review of the challenge, the evidence was irrelevant and properly excluded, or the exclusion, if error, was harmless.  Consequently, we affirm the appellant's conviction for defrauding an innkeeper.

<u>Affirmed.</u>